**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JEAN PIERRE ARTEAGA,

                *Petitioner,*

v.

MICHAEL B. MUKASEY,* Attorney General,

                *Respondent.*

No. 05-70368

Agency No.
A92-085-513

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 8, 2007—Pasadena, California

Filed December 27, 2007

Before: Stephen S. Trott and Johnnie B. Rawlinson, Circuit
Judges, and Samuel P. King,** Senior Judge.

Opinion by Judge Trott

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

16819

## COUNSEL

Shan D. Potts, Berke Law Offices, Los Angeles, California, for the petitioner.

Genevieve Holm and Jonathan Robbins, United States Department of Justice, Civil Division, Washington, DC, for the respondent.

## OPINION

TROTT, Circuit Judge:

Abraham Lincoln, one of our nation's wisest presidents and most able lawyers, had an incisive way of illustrating a point about the meaning of language as used in the law. He would ask, "If you call a dog's tail a leg, how many legs does a dog have?" He would then reject the usual answer "five" with the statement that calling a tail a leg doesn't make it a leg, "the answer is still four." We find useful in Part IV A. of this opinion President Lincoln's admonition not to become misled by

expansive and abstract definitions of the term "social group" to the extent that the application of such a definition fails to comport with the manifest legislative purpose of the law and its language.

## I

Jean Pierre Arteaga, a long-time lawful permanent resident of the United States, faces removal to El Salvador. He petitions for review of a decision of the Board of Immigration Appeals dismissing his appeal from an immigration judge's ("IJ") order finding him removable as an alien convicted of an aggravated felony and of an offense related to a controlled substance, and denying him withholding of removal and relief under the Convention Against Torture ("CAT"). Before this court Arteaga argues, *inter alia*, that because he is marked with indelible tattoos indicating his gang membership and may therefore be persecuted by rival gang members if returned to his home country, he qualifies for withholding of removal under 8 U.S.C. § 1231(b)(3) as a member of a "social group." He defines this group variously as "American Salvadorian U.S. gang members of a Chicano American street gang," and as former members of the same. We have jurisdiction to address this question pursuant to 8 U.S.C. § 1252(a)(2)(D),[1] and we hold that Arteaga does not qualify for withholding of removal as a member of a social group.

Moreover, the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(C) requires us to dismiss the portion of Arteaga's petition based on his claim that his conviction under Cal-

---

[1]The government's argument that we lack jurisdiction to review the BIA's rulings on the issues of withholding and CAT relief has been heard and rejected by this court. *See Morales v. Gonzales*, 478 F.3d 972, 980 (9th Cir. 2007) (noting that the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(C) apply to removal orders, and not to applications for asylum, withholding of removal, or CAT relief); *id.* ("[A]s to our resolution of factual issues, when an IJ . . . denies [CAT] relief on the merits, none of the jurisdiction-stripping provisions . . . apply[.]").

ifornia Vehicle Code § 10851(a) does not constitute an aggravated felony.

We deny the remainder of his petition because, Arteaga's arguments notwithstanding, 1) he is not a national of the United States, 2) he is not entitled to relief under the CAT, and 3) the IJ who presided over his hearing was not biased.

## II

At the age of four, Arteaga's parents brought him from El Salvador to the United States, where he was admitted as a lawful permanent resident. He lived in Los Angeles, and when he was fourteen years old joined a malignant Mexican street gang called "New Hall 13." As a New Hall 13 member, Arteaga would go "gang banging," participating in violent fights involving knives and guns, and going into rival-gang neighborhoods to find rival-gang members to beat up or run over with a vehicle. In removal proceedings, he testified that his participation in gang activity made him a target for violent attacks by rival gangs.

Arteaga testified that while some members of his gang committed crimes, such as trading in drugs and stealing, he did not. However, Arteaga was convicted in California Superior Court of 1) possession of methamphetamine in violation of California Health and Safety Code § 11377(a), 2) unlawful driving and taking of a vehicle in violation of California Vehicle Code § 10851(a), and 3) possession of a concealed weapon in violation of California Penal Code § 12025(a)(2). He was sentenced to two years for each conviction, the sentences to run concurrently. Subsequently, the Department of Homeland Security charged Arteaga with removability as an alien convicted of an aggravated felony and an offense related to a controlled substance.[2]

---

[2]The concealed-weapon violation was not a ground for removal and is not at issue in this appeal.

At his hearing before the IJ, Arteaga argued that he was not a removable alien because he was a "national of the United States." He testified that he had applied for citizenship in 1995 when he was nineteen years old, but his application was denied due to outstanding traffic tickets, and he never reapplied. Arteaga never took the oath of citizenship. The IJ ruled that Arteaga (1) was not a national because he was not born in the United States or a territory of the United States, (2) was not the child of an individual born in the United States or a territory of the United States, and (3) his presence in the United States did not make him a national. The IJ ruled also that while Arteaga's drug conviction was not an aggravated felony, his conviction pursuant to California Vehicle Code § 10851(a) was, and therefore the only forms of relief available to him were withholding of removal and protection under the CAT.

In support of his argument that he qualified for withholding and CAT relief, Arteaga presented documentary evidence, including two written statements from an El Salvadoran magistrate, showing that the El Salvadoran government, like other central American governments, has duly enacted "Mano Duro" laws aimed at cracking down on gang violence. According to the evidence, an alien removed from the United States to El Salvador will be detained for seventy-two hours if suspected of gang affiliation while undergoing a registration process prescribed by the Mano Duro laws. Arteaga testified that he could not clothe himself to adequately conceal all of his tattoos, which cover a substantial portion of his body including his head, hands, and arms, and which mark him as a gang member. Therefore, Atreaga argued, he would be unable to conceal his identity as a member of New Hall 13, and if removed to El Salvador would be placed in detention, where rival gang members would identify and kill him.

Noting that the crux of Arteaga's argument was the tattoos indicating his association with a criminal street gang, the IJ ruled that Arteaga was not a member of a social group as that

concept has been incorporated in our laws providing for the possibility of asylum in our nation. The IJ denied CAT relief, finding that Arteaga did not present evidence showing that it was more likely than not he would be persecuted or tortured if removed to El Salvador. The IJ noted that one of the El Salvadoran magistrate's written statements said that due process was generally afforded individuals subject to Mano Duro laws, and that El Salvadoran government officials were not complicit in the abuses of persons housed in El Salvadoran jails.

Arteaga appealed to the BIA. Relying on *Matter of Acosta*, 19 I. & N. Dec. 211, 233-34 (BIA 1985) (members of a taxi cooperative do not constitute a social group), the BIA agreed with the IJ's analysis and dismissed his appeal. Arteaga timely filed a petition for review in this court.

## III

We have jurisdiction to review questions of law raised upon a petition for review, and review them de novo. *See* 8 U.S.C. § 1252(a)(2)(D); *Murillo-Espinoza v. INS*, 261 F.3d 771, 773 (9th Cir. 2001). The BIA's statutory interpretation is entitled to deference, but the court is not obligated to accept an interpretation clearly contrary to the plain and sensible meaning of a statute. *Kankamalage v. INS*, 335 F.3d 858, 862 (9th Cir. 2003). The court reviews de novo the legal question of whether a petitioner is a national of the United States. *Perdomo-Padilla v. Ashcroft*, 333 F.3d 964, 966 (9th Cir. 2003). The BIA's findings underlying its determination that an applicant is not eligible for relief under the CAT are reviewed for substantial evidence. *See Bellout v. Ashcroft*, 363 F.3d 975, 979 (9th Cir. 2004). Under the substantial evidence standard, the court upholds the BIA's determination unless the evidence in the record compels a contrary conclusion. *Prasad v. INS*, 101 F.3d 614, 616-17 (9th Cir. 1996).

**IV**

**A.**

**[1]** In the Ninth Circuit, a social group is defined abstractly as a group united by 1) a voluntary association which imparts some common characteristic that is fundamental to the members' identities, or 2) an innate characteristic which is so fundamental to the identities or consciences of its members they either cannot or should not be required to change it. *See Hernandez-Montiel v. INS*, 225 F.3d 1084, 1092-93 (9th Cir. 2000). This disjunctive definition reconciles the "voluntary association category" of social groups we recognized in *Sanchez-Trujillo v. INS*, 801 F.2d 1571, 1576 (9th Cir. 1986), with the requirement the BIA articulated in *Matter of Acosta*, 19 I. & N. Dec. at 233, that members of a social group exhibit some "immutable characteristic." *Hernandez-Montiel*, 225 F.3d at 1093. In *Hernandez-Montiel*, we explained that the Ninth Circuit's definition of voluntary associations qualifying as "social groups" is "similar to the Supreme Court of Canada's definition: . . . groups whose members voluntarily associate for reasons so fundamental to their human dignity that they should not be forced to forsake that association[.]" 225 F.3d at 1093 n.6. In the Ninth Circuit, an individual may therefore be a member of a social group because of either certain innate characteristics or on the basis of certain voluntary associations. Further clarifying the definition of "particular social group," the BIA recently ruled that certain factors, including whether a group's shared characteristic gives members social visibility and whether the group can be defined with sufficient particularity to delimit its membership, should be considered in determining whether a particular social group exists. *In re A-M-E*, 24 I. & N., Dec. 69, 74-76 (BIA 2007) ("wealthy" Guatemalans do not constitute a particular social group within the meaning of the "refugee" description).

Arteaga's counsel suggests that Arteaga's unique history and shared cultural experience as a *former* gang member qual-

ifies as "an innate characteristic" and thus he is a member of a social group. *See Hernandez-Montiel*, 225 F.3d at 1091-92 (noting that social group status might be predicated on a shared past experience fundamental to the members' identities or consciences). We note that Arteaga testified before the IJ that he was *still* a gang member, but that he was no longer "active." Regardless, Arteaga seeks social group status to defeat removal to El Salvador, where, he argues, he will be tortured or killed when he is identified as a gang member because of his tattoos. According to this argument, his tattoos are a problem not because they identify him as an individual with a unique and shared cultural experience and history, but because they identify him as member of New Hall 13. Boiled down, his argument rests ultimately on his claim that his tattoos mark him for potential persecution.

Under the BIA's decision in *In re A-M-E*, a shared characteristic of a group must generally be recognizable to others. 24 I. & N. Dec. 69 at 74. In assessing visibility, we must consider the persecution feared in the context of the country concerned. *Id.* Here, Arteaga's tattoos might make him visible to the police and other gang members as a gang member. He has argued and presented evidence that he could be detained for up to seventy-two hours under the Mano-Duro laws. This alone does not amount to persecution. Nor do we believe that the BIA's requirement of social visibility intended to include members or former members of violent street gangs under the definition of "particular social group" merely because they could be readily identifiable.

**[2]** As both the IJ and BIA noted, Arteaga's case is similar to *Castellano-Chacon v. INS*, 341 F.3d 533 (6th Cir. 2003), the only published decision with facts analogous to those before us. In *Castellano-Chacon*, the Sixth Circuit rejected the petitioner's claim that, as a tattooed former gang member, he was entitled to withholding of removal as a member of a social group, despite evidence of extra-judicial killings by Honduran security forces and paramilitary groups who specif-

ically targeted tattooed youth, who were assumed to be gang members involved in criminal activity. *Castellano-Chacon*, 341 F.3d at 539-40. The court held that "tattooed youth" was an overbroad category falling outside the definition of "social group." *Id.* at 549. This comports with the BIA's recent holding that a social group must be sufficiently particular. *In re A-M-E*, 24 I. & N. Dec. 69 at 76. We agree: "Tattooed gang member" falls outside the Ninth Circuit's definition of social group.

**[3]** Moreover, even if we focus our inquiry not on Arteaga's tattoos, but on his unique and shared experience as a gang member, this characteristic is materially at war with those we have concluded are innate for purposes of membership in a social group. *See*, *e.g.*, *Hernandez-Montiel*, 225 F.3d at 1094 (finding gay men with female sexual identities a social group); *Sanchez-Trujillo*, 801 F.2d at 1576 (identifying members of a family as an example of a social group) (citing *Herdandez-Ortiz v. INS*, 777 F.2d 509, 516 (9th Cir. 1985)). Arteaga's "shared past experience" includes violent criminal activity. We cannot conclude that Congress, in offering refugee protection for individuals facing potential persecution through social group status, intended to include violent street gangs who assault people and who traffic in drugs and commit theft. Following in the analytical footsteps of President Lincoln, calling a street gang a "social group" as meant by our humane and accommodating law does not make it so. In fact, the outlaw group to which the petitioner belongs is best described as an "antisocial group," the definition of antisocial being, "tending to interrupt or destroy social intercourse; hostile to the well-being of society; characterized by markedly deviating behavior; averse to the society of others or to social intercourse; misanthropic." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 96 (2002). To do as Arteaga requests would be to pervert the manifest humanitarian purpose of the statute in question and to create a sanctuary for universal outlaws. Accordingly, we hold that participation in such activity is not fundamental to gang members' individual

identities or consciences, and they are therefore ineligible for protection as members of a social group under 8 U.S.C. § 1231(b)(3).

In light of the Ninth Circuit's definition and the manifest purpose of the statute, we would be hard-pressed to agree with the suggestion that one who voluntarily associates with a vicious street gang that participates in violent criminal activity does so for reasons so fundamental to "human dignity" that he should not be forced to forsake the association. *See Hernandez-Montiel*, 225 F.3d at 1093 n.6. Again, Arteaga's affiliation with New Hall 13 included continuing violent acts against rival gang members, trading in drugs, and theft. We cannot imagine holding that a voluntary association that includes such activities is fundamental to human dignity, and that an individual who joins such an association should not be forced to forsake it.

**[4]** Arteaga's attempt to present himself as a former member of a social group fares no better. Disassociating oneself from a group does not automatically put one in another group as group is meant in the law. One who disassociates himself from a group may fall analytically into a definable category, but the category of non-associated or disaffiliated persons in this context is far too unspecific and amorphous to be called a social group, whether that person is tattooed or not. *See In re A-M-E*, 24 I. & N. Dec. 69 at 76 (holding the terms "wealthy" and "affluent" "are too amorphous to provide an adequate benchmark for determining group membership").

## B.

Section 1227(a)(2)(A)(iii) of 8 U.S.C. makes removable any alien convicted of an aggravated felony, which includes "theft offense[s] . . . for which the term of imprisonment [is] at least one year." *See* 8 U.S.C. § 1101(a)(43)(G). Section 1252(a)(2)(C) of 8 U.S.C. divests the federal courts of jurisdiction to review any final order of removal against an alien

adjudicated removable by reason of having committed an aggravated felony. If, however, in challenging an agency determination that an alien is removable by reason of committing an aggravated felony, the alien raises a colorable question of law, then 8 U.S.C. § 1252(a)(2)(D) gives the court jurisdiction to resolve the legal question in the first instance. *Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102, 1103 (9th Cir. 2006). If, upon resolving the legal question, the court determines the alien was convicted of an aggravated felony, the jurisdictional bar of § 1252(a)(2)(C) prevents the court from proceeding with any further review of the agency decision.

Arteaga argues that the California statute pursuant to which he was convicted, California Vehicle Code § 10851(a), does not define an offense qualifying as an aggravated felony under federal law, because the statute does not define a "theft offense." First, he claims that the statute does not define a categorical theft offense because it prohibits aiding and abetting as well as direct commission of the act, and he argues that applying the modified categorical approach, there is no evidence in the record of conviction showing he committed a theft offense. Second, Arteaga argues that a theft offense must involve a permanent taking, that he was arrested for "joyriding," and therefore he lacked the requisite intent to permanently deprive another of property.

**[5]** Arteaga's first argument is foreclosed by the Supreme Court's decision in *Gonzales v. Duenas-Alvarez*, 127 S.Ct. 815 (2007). There, the Court held that the generic term "theft offense" in 8 U.S.C. § 1101(a)(43)(G) includes the crime of aiding and abetting, and vacated a Ninth Circuit decision holding that § 10851(a) was not a categorical theft offense. *Duenas-Alvarez*, 127 S.Ct. at 818, 823.

**[6]** *Duenas-Alvarez* did not address directly the issue Arteaga raises in his second argument — whether a "theft offense" necessarily includes the intent to permanently deprive another of property. However, the Court began with

the "generic definition of theft" accepted by the Ninth Circuit, other Circuits, and the BIA: "[T]he taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, *even if such deprivation is less than total or permanent.*" *Duenas-Alvarez*, 127 S.Ct. at 820 (emphasis added); *see also In re V-Z-S*, 22 I. & N. Dec. 1338, 1346 (2000) (defining "theft offense" using the same language). Arteaga cites to no authority to support his assertion that a theft offense requires an intent to permanently deprive another of property.[3]

Third and finally, Arteaga argues that § 10851(a) is a bifurcated statute that includes the intentless crime of accessory to or accomplice in the driving or unauthorized taking or stealing of a vehicle, and that this takes the statute outside of *Duenas-Alvarez*'s definition of theft offense. This court held in *United States v. Vidal*, 504 F.3d 1072, 1074-75 (9th Cir. 2007), that § 10851(a) is not a categorical theft offense because the possibility of being convicted under the statute as an accessory after the fact renders it categorically broader than the generic theft offense. This holding is inapposite here, however, because unlike the facts in *Vidal*, and as the IJ noted here, the record of conviction in Arteaga's case conclusively establishes that Arteaga was convicted, under § 10851(a), of unlawfully taking a vehicle with the intent to either permanently or temporarily deprive the owner of possession — a theft offense. In other words, in light of *Duenas-Alvarez*'s

---

[3]*United States v. Perez-Corona*, 295 F.3d 996 (9th Cir. 2002) does not further Arteaga's argument. There, we held that an alien convicted of "joyriding" pursuant to Arizona Revised Statutes § 13-1803 was not removable as an alien convicted of an aggravated felony because the statute did not define a "theft offense" within the meaning of 8 U.S.C. § 1101(a)(43)(G). Our reasoning, however, was not based on the distinction between permanent and temporary deprivation. We held that a "theft offense" must require some showing of intent to deprive. Because the state statute had no intent element at all, it did not define a theft offense. *Perez-Corona*, 295 F.3d at 1001.

incorporation of the generic definition of theft offense, and *Vidal*'s holding that § 10851(a) is not a categorical theft offense, applying the *Taylor* modified-categorical approach to the facts here reveals that Arteaga was convicted of a theft offense, an aggravated felony under federal immigration law. *See Taylor v. United States*, 495 U.S. 575, 602 (1990) (holding that a predicate conviction qualifies as a generic crime if either its statutory definition substantially corresponds to the generic definition, or the charging paper and jury instructions required the jury to find all the elements of the generic crime in order to convict).

**[7]** Because we determine, pursuant to our limited jurisdiction under 8 U.S.C. § 1252(a)(2)(D), that the IJ and BIA concluded correctly that Arteaga was convicted of a theft offense constituting an aggravated felony, 8 U.S.C. § 1252(a)(2)(C) mandates that we proceed no further with review of this issue and dismiss this portion of the petition for lack of jurisdiction.

## C.

Arteaga argues that he is not an alien subject to removal, but a national of the United States because he is a legal permanent resident of long duration who has made an application for United States citizenship. "Alien" is defined in 8 U.S.C. § 1101(a)(3) as "any person not a citizen or national of the United States." At oral argument, counsel for Arteaga emphasized that according to the plain language of 8 U.S.C. § 1101(a)(22), a national of the United States does not have to be a citizen. This is true. In *Hughes v. Ashcroft*, however, we made clear that one cannot become a national through lengthy residency alone, and held that "a person who is born outside the United States to qualify for 'national' status . . . must . . . demonstrate (1) birth in a United States territory or (2) an application for United States citizenship." 255 F.3d 752, 756-57 (9th Cir. 2001).

**[8]** In *Perdomo-Padilla v. Ashcroft*, we narrowed slightly the conditions under which one may claim status as a

national, holding that "under the INA, a person may become a national . . . only through birth or naturalization." 333 F.3d 964, 966 (9th Cir. 2003). Reading *Hughes* and *Perdomo-Padilla* together, the "birth" requirement refers to birth either in the United States or in a United States territory. Arteaga was born in El Salvador. He is not a national through birth.

**[9]** As for the possibility of becoming a national through naturalization, Arteaga makes the same argument we rejected in *Perdomo-Padilla* — that in light of *Hughes*, he is not an "alien" convicted of an aggravated felony because he had completed an application for naturalization. *See Perdomo-Padilla*, 333 F.3d at 965. We noted in *Perdomo-Padilla* that status as a national requires permanent allegiance to the United States, and that "[a] naturalization applicant cannot rightly be said to owe *permanent* allegiance, because naturalization applications are often denied or withdrawn." *Id.* at 968. According to Arteaga's testimony, his application was denied and he did not reapply. Thus, he is not a national through naturalization.

**D.**

**[10]** A petitioner seeking CAT relief must show that it is more likely than not that he will be tortured upon removal, and that the torture will be inflicted at the instigation of, or with the consent or acquiescence of, the government. *See Kamalthas v. INS*, 251 F.3d 1279, 1283 (9th Cir. 2001); *Zheng v. Ashcroft*, 332 F.3d 1186, 1188 (9th Cir. 2003).

The BIA agreed with the IJ that Arteaga failed to prove that any potential torture he might experience in El Salvador would be at the hands of the government. Arteaga argues that the El Salvadoran magistrate's statement "specifically noted" that prison officials will not protect gang members who are imprisoned. Arteaga seems to be referring to the magistrate's statement that deportees are not protected from gangs because the Mano Duro law's purpose is to protect *citizens* from

gangs, and deportees are often suspected of being gang members.

As the BIA noted, the statement says that prison authorities do not participate in abuses or act in complicity with gang members. The statement says that "it cannot be proven" that youth the police apprehend are subjected to beatings. And it says that detainees are released after going before a judge if there is no evidence against them, and that as long as the application of Mano Duro is "in the hands of judges of the Common Penal and Juvenile, due process is respected."

A separate declaration submitted by the same magistrate contains conflicting statements the BIA did not mention. For example, the magistrate stated that "there have been numerous reports of beatings and physical mistreatment" of detainees by police; "there is considerable brutality between the inmates"; "[p]rison authorities are indifferent to the conditions of the prisons"; and "If . . . Arteaga were deported he will suffer . . . indefinite detention, . . . and likely death or physical abuses at the hands of rival gangs" and "[d]etention authorities will not provide him with adequate protections."

**[11]** Weighing the evidence, the IJ and the BIA agreed that Arteaga did not meet his burden of showing that more likely than not he would be tortured at the hands of the El Salvadoran government if removed. The evidence in the record does not compel a contrary result. The IJ noted that Arteaga showed a possibility of mistreatment if he were removed to El Salvador, but concluded that he failed to establish that, more likely than not, the government would torture him. Likewise, the BIA concluded that Arteaga failed to establish that any possible torture would more likely than not be at the hands of the government. Applying the substantial evidence standard of review, we will not disturb the decision of the BIA dismissing Arteaga's appeal on this issue.

We note that Arteaga's assertion that the IJ held him to an incorrect burden of proof, demanding that he prove a "100

percent certainty" of torture rather than applying the more-likely-than-not standard, is demonstrably false. The record clearly shows that the IJ and the BIA both correctly identified and applied the more-likely-than-not standard.

## E.

**[12]** We reject Arteaga's claim that the immigration judge demonstrated extreme bias and prejudice, insinuating that Arteaga deserved any harm that might befall him in prison. He has offered no citations to the record to support this accusation. After reviewing the record, we agree with the BIA that although the IJ commented on Arteaga's gang-related activity and criminal violations, he provided a thorough and unbiased decision on Arteaga's case.

## V

We reject Arteaga's argument that he is a member of a social group within the meaning of 8 U.S.C. § 1231(b)(3), and **DENY** this aspect of his petition for review. Pursuant to 8 U.S.C. § 1252(a)(2)(C), we **DISMISS** the portion of Arteaga's petition challenging the BIA's conclusion that he was convicted of an aggravated felony. We **DENY** the remainder of his petition.

**DISMISSED** in part; **DENIED** in part.