**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JOSE ALBERTO CORDOVA-
MANZANAREZ,

    Petitioner,

 v.

ERIC H. HOLDER, Jr., Attorney General,

    Respondent.

No. 09-71555

Agency No. A097-476-196

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 7, 2010
Pasadena, California

Before: NOONAN, BERZON, and CALLAHAN, Circuit Judges.

 Jose Alberto Cordova-Manzanarez (Cordova) petitions for review of a

decision of the Board of Immigration Appeals (BIA) affirming the Immigration

Judge's (IJ) denial of Cordova's application for asylum and withholding of

removal on credibility grounds and dismissing his appeal from the IJ's denial of

---

  [*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Cordova's application for relief under the United Nations Convention Against Torture (CAT). We grant the petition in part and remand to the BIA.

**Asylum and Withholding Claims**

The BIA and IJ based their adverse credibility determination on (1) a single inconsistency in Cordova's testimony regarding the year he was shot for the first time and (2) an assertion that Cordova's claim that he was forcibly tattooed is inherently implausible.

1. In focusing on one date inconsistency in Cordova's otherwise consistent testimony, the IJ and BIA failed to "recognize that the normal limits of human understanding and memory may make some inconsistencies or lack of recall present in any witness's case." *Shrestha v. Holder*, 590 F.3d 1034, 1044-45 (9th Cir. 2010). Further, and critically, neither the IJ nor the BIA took into account with regard to the credibility finding testimony by Dr. Kuck that Cordova showed signs of cognitive compromise that had affected his memory and his ability to understand and answer questions without prompting and redirection. Here, Dr. Kuck's testimony indicates that Cordova's single confusion about one date could have resulted from either a momentary loss of memory or a misunderstanding of the question. Neither explanation suggested by the expert testimony concerning Cordova's cognitive impairment was considered by the IJ or BIA in making the

2

adverse credibility finding. The agency thus failed to take Cordova's individual circumstances into account in making its credibility finding, and thereby erred. *See id*. at 1041 (holding that adverse credibility determinations under the REAL ID Act must "take into consideration the individual circumstances of the applicant").

**2.**    The agency also erred by failing to take into account all of the relevant factors when concluding that Cordova's story of forcible tattooing was inherently implausible. *See id.* at 1040 (holding that an adverse credibility determination under the REAL ID Act must take into account "the totality of the circumstances, and all relevant factors"). The BIA and IJ relied heavily on Deputy Sheriff Mata's testimony that it would be too hard to hold someone down and tattoo him, and that gang members are proud of their tattoos. In doing so, the BIA ignored Dr. Serpas' testimony that Cordova was embarrassed by his blurry, distorted tattoos. The agency also ignored Cordova's testimony that he was involuntarily tattooed at gunpoint while tied to a chair, obviating as irrelevant the suggestion one could not involuntarily tattoo someone by just holding him down. Further, there is no inherent inconsistency between gang members' pride in gang tattoos and a desire that all gang members, including those forcibly inducted, wear them.

As BIA's adverse credibility finding is for these reasons not supported by substantial evidence, on remand, Cordova is to be deemed credible for the purposes

3

of assessing his asylum and withholding claims. *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1094-95 (9th Cir. 2009) ("the deemed credible rule may apply when it is evident that the IJ and BIA have both strained to provide reasons properly supporting an adverse credibility finding, but despite their best efforts have been unable to do so").

**3.** Because the BIA's decision did not cite *Matter of Burbano*, 20 I.&N. Dec. 872 (BIA 1994), nor did it expressly adopt the IJ's alternative findings, this court cannot presently address the question whether Cordova was persecuted on a protected ground. *See Joseph v. Holder*, 600 F.3d 1235, 1239 (9th Cir. 2010) (holding that this court's review is limited to the BIA decision and the portions of the IJ's decision that it expressly adopted); *see also Gonzales v. Thomas*, 547 U.S. 183, 185-87 (2006) (per curiam) and *INS v. Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam) (holding that this court must remand to the BIA to allow it to address in the first instance an issue that it has not yet considered). The BIA should consider the issue on remand.

**CAT Claims**

Cordova asserts that he will more likely than not be tortured by either vigilante groups or by the police if returned to El Salvador. We consider each claim in turn.

4

**1.** Although evidence in the record establishes that Sombra Negra is a notorious vigilante organization that has claimed credit for murdering gang members, the record supports the BIA's conclusion that the Salvadoran government has prosecuted some members of Sombra Negra and is attempting to control the group. Thus, the record does not compel a conclusion that Cordova would more likely than not be tortured by vigilante groups if returned to El Salvador. *See Santos-Lemus v. Mukasey*, 542 F.3d 738, 748 (9th Cir. 2008).

**2.** As to torture by police, Cordova testified that police had beaten him with their batons several times after stopping him and asking him if he was a gang member. As the government pointed out, however, it was unclear whether the police in El Salvador beat him because of his tattoos. Cordova had trouble remembering when these incidents with the police occurred, but he thought they probably happened between 1996 and 1998. The record supports the BIA's conclusion that these were isolated incidents. Moreover, while some documentary evidence in the record suggests that Salvadoran police commit human rights abuses, and target and abuse individuals with tattoos, the record dos not compel a conclusion that Cordova would more likely than not be tortured by the police if returned to El Salvador.

Cordova's CAT claim is denied.

5

**PETITION GRANTED IN PART AND REMANDED.**

**Cordova-Manzanarez v. Holder, No. 09-71555**

CALLAHAN, CIRCUIT JUDGE, concurring and dissenting:

Although I concur in the majority's holding that Mr. Cordova-Manzanarez ("Cordova") is clearly ineligible for relief under the Convention Against Torture ("CAT"), I dissent from the majority's decision to reverse the Board of Immigration Appeals ("BIA") and Immigration Judge ("IJ")and remand for further proceedings to consider Cordova's asylum and withholding of removal claims.

The BIA and the IJ found that, under the totality of the circumstances, Cordova's claims were inconsistent, unpersuasive and not credible. In particular, the BIA and IJ noted that Cordova had provided contradictory dates as to when he was shot and that his story about being forcibly tattooed was implausible. Notably, the IJ devoted fifteen pages of his opinion to detailing Cordova's claims, the evidence and testimony – including the testimony of both sides' experts – before concluding that "[w]ith due respect to the experts who testified on respondent's behalf, I do not find respondent to be a credible or persuasive witness as to the issues before this Court on the basis of the totality of the circumstances and all relevant factors."

In reaching its conclusion that the BIA and IJ erred, the majority fails to adhere to the deferential substantial evidence standard that is required of us for reviewing immigration agency decisions. 8 U.S.C. § 1252(b)(4)(B); *see also*

*Arteaga v. Mukasey*, 511 F.3d 940, 944 (9th Cir. 2010) ("Under the substantial evidence standard, the court upholds the BIA's determination unless the evidence in the record compels a contrary conclusion."). "This strict standard bars the reviewing court from independently weighing the evidence and holding that the petitioner is eligible for asylum, except in cases where compelling evidence is shown." *Kotasz v. I.N.S.*, 31 F.3d 847, 851 (9th Cir. 1994). "We are not free to look anew at the testimony and then measure the soundness of the agency's decision by what we would have found. Nor does evidence compel the opposite conclusion just because it would also support a different result." *Donchev v. Mukasey*, 553 F.3d 1206, 1213 (9th Cir. 2009). Furthermore, while the IJ must consider the totality of the circumstances, under the REAL ID Act, an IJ does not need to find that a petitioner's "inconsistency inaccuracy, or falsehood" go "to the heart of an applicant's claim." *See* Real ID Act § 101(a)(3)(iii).

Here, Cordova's inconsistent responses regarding the dates that he was shot coupled with the BIA and IJ's finding that his story about being forcibly tattooed was implausible were more than sufficient, under our deferential standard of review, to uphold the BIA and IJ's decisions. Their decisions make clear that Cordova and his experts' testimony and evidence was considered, but the government's evidence and its experts' testimony were determined to be more

2

compelling.  Nothing the majority points to *compels* a conclusion contrary to that reached by the BIA and IJ and there is certainly nothing that supports the majority's conclusion that the deemed credible rule should apply here.  Because I would find that the BIA and IJ's asylum and withholding decisions were supported by substantial evidence, and because I disagree with the majority's failure to adhere to our deferential standard of review, I dissent.