**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
| --- | --- |
| NATALIE SIMONE BURKE, AKA Joddi Burke,<br><br>             Petitioner,<br><br>v.<br><br>LORETTA E. LYNCH, Attorney General,<br><br>             Respondent. | No. 12-71364<br><br>Agency No. A035-965-771<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 18, 2015
San Francisco, California

Before: O'SCANNLAIN, FERNANDEZ, and M. SMITH, Circuit Judges.

Natalie Burke petitions from the Board of Immigration Appeals's (BIA)

dismissal of her appeal of the Immigration Judge's (IJ) order denying her request

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

for deferral of removal under the Convention Against Torture (CAT).[1] Burke also challenged the IJ's denial of a continuance pending a decision on her Petition for U Nonimmigrant Status (U visa). However, Burke acknowledged at oral argument that the continuance issue is moot in light of the United States Citizenship and Immigration Services's denial of her U visa petition.[2]

"The BIA's findings underlying its determination that an applicant is not eligible for relief under the CAT are reviewed for substantial evidence." *Arteaga v. Mukasey*, 511 F.3d 940, 944 (9th Cir. 2007). "Under the substantial evidence standard, the court upholds the BIA's determination unless the evidence in the record compels a contrary conclusion." *Id*. The definition of torture under the CAT includes an intentional infliction of pain for a reason based on discrimination, "when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

---

[1] United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, *adopted* Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85, implemented at 8 C.F.R. §§ 208.16-18, 1208.16-18.

[2] Burke's request for judicial notice therefore is denied as moot.

"Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). To be entitled to deferral of removal under the CAT, "aliens must show that it is 'more likely than not' that they will be tortured (rather than persecuted on a protected ground) if returned to their home countries." *Wakkary v. Holder*, 558 F.3d 1049, 1053 (9th Cir. 2009) (quoting 8 C.F.R. § 208.16(c)(2)).

Here, substantial evidence supports the BIA's evaluation of the aggregate risk that Burke would be tortured if removed. Adopting the IJ's determination, the BIA noted that Burke "did not present sufficient evidence to establish that her father was murdered due to his political affiliation, or that anyone affiliated with a rival political party or the government would be interested in harming her due to her relationship to her father."

Burke's father was a member of the most popular political party in Jamaica, which at the time held the majority of seats in the House of Representatives, as well as the Prime Ministership. Burke's claim that public officials or those acting at their direction would seek to harm her is purely speculative. She admitted that the only reason why she believed that her father was killed due to his political

3

activity was that her family spoke vaguely of police officers asking him for favors that he refused to perform. And Burke has not shown what political activities her father engaged in or why they would have caused public officials to seek to harm him, much less her.

Substantial evidence also supports the BIA's evaluation of the combined risk of torture based on (1) her relationship with her father with (2) individuals who might seek to retaliate for Burke's assistance in the apprehension of a fugitive in the United States. The BIA did not err in concluding that Burke's safe return to Jamaica in 2010 for her father's well-publicized funeral "undercut both reasons for her claimed fear of torture." Indeed, Burke testified that she never independently verified that the fugitive had even returned to Jamaica, and had no interest in checking, since she had no intention to go there. Nor has Burke shown that any such retaliation would be performed "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

Thus, the evidence does not compel a conclusion contrary to the BIA's.

**PETITION DENIED.**