NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 11 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MILENKO KRSTIC,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No.   17-72542

Agency No. A075-042-740

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 4, 2019
Portland, Oregon

Before:  PAEZ and RAWLINSON, Circuit Judges, and KOBAYASHI,[**] District Judge.

Milenko Krstic ("Krstic"), a native and citizen of Bosnia, petitions for review of the Board of Immigration Appeals' ("BIA") order dismissing his appeal from an immigration judge's ("IJ") order of removal.  We have jurisdiction under 8 U.S.C. § 1252.  We review de novo the agency's legal determinations, and we

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Leslie E. Kobayashi, United States District Judge for the District of Hawaii, sitting by designation.

review its factual findings for substantial evidence. *Singh v. Holder*, 656 F.3d 1047, 1051 (9th Cir. 2011). We grant in part, deny in part, and dismiss in part the petition for review. Krstic raises a number of arguments which we address below.

**1.** Krstic first challenges the agency's adverse credibility determination. This claim fails because the credibility finding was supported by at least three specific, cogent reasons. *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010). First, Krstic's claim of ignorance of the war crimes was implausible in light of the credible testimony of the government's expert witness. Second, his testimony regarding his weapons training and possession of weapons was inconsistent. And third, Krstic minimized the scope of his military duties. Krstic does not articulate why his post-traumatic stress disorder should salvage these specific inconsistencies.

**2.** Krstic next objects to the agency's imposition of the persecutor bar. Under the Immigration and Nationality Act, "any person who ordered, incited, assisted, or otherwise participated in" persecution of any person on account of a protected ground is ineligible for asylum and withholding of removal. 8 U.S.C. §§ 1101(a)(42), 1158(b)(2)(A)(i), 1231(b)(3)(B)(i). Krstic argues that his signing of supply disbursements did not constitute participation in persecution.

An individual's actions must be considered along a "continuum of conduct" before deeming those actions persecutory. *Miranda Alvarado v. Gonzales*, 449

F.3d 915, 926 (9th Cir. 2006). This inquiry "requires a particularized evaluation of both personal involvement and purposeful assistance in order to ascertain culpability." *Id.* at 927 (some citations omitted) (citing *Vukmirovic v. Ashcroft*, 362 F.3d 1247, 1252 (9th Cir. 2004)). Thus, there are two questions we must address: first, whether Krstic was personally involved in persecution; and second, whether he purposefully assisted in that persecution. *Kumar v. Holder*, 728 F.3d 993, 998–99 (9th Cir. 2013). The government must present "threshold evidence of *each* element" to trigger the bar. *Budiono v. Lynch*, 837 F.3d 1042, 1048 (9th Cir. 2016) (emphasis in original).

Regarding the first question, we consider "whether the petitioner's involvement was active or passive." *Kumar*, 728 F.3d at 998 (citing *Miranda Alvarado*, 449 F.3d at 927–28)). The petitioner in *Miranda Alvarado*—who had served as a Quechua interpreter for Peruvian government torture squads— exemplifies this distinction. He was "undisputedly a regular part of interrogation teams," and was "present and active during the alleged persecution[.]" *Id.* at 998– 99 (quoting *Miranda Alvarado*, 449 F.3d at 928)).

The government did not present evidence that Krstic witnessed war crimes or actively persecuted anyone. The IJ, however, found that Krstic's signing of fuel receipts was "sufficient to show that he was 'present and active during the alleged persecution'" because that activity was "not 'highly attenuated'" to the

3

persecution.[1]  As a result, the IJ concluded that the government met its burden to present a prima facie case of this element of the persecutor bar, even though Krstic was not "present and/or assisting at the killing sites" or "in a position of authority with regard to planning or inciting the executions."

No authority from our court supports this conclusion.  Whereas Miranda Alvarado was a key part of the interrogation teams and was present and active during the torture sessions, Krstic did not participate in the Srebrenica murders and was neither present nor active during the killings.  *See Kumar*, 728 F.3d at 998–99 (citing *Miranda Alvarado*, 449 F.3d at 928).  In this respect, the government failed to present a prima facie case that Krstic was culpable under the first prong of the persecutor bar inquiry.  The agency thus erred in finding that Krstic was personally involved in persecution.  Because the government must present threshold evidence of each element of the bar, *Budiono*, 837 F.3d at 1048, this error standing alone is

---

[1] The dissent asserts that "Krstic personally verified the delivery of the fuel, its recipient, and its intended use" and that "[t]he government's expert witness left no doubt that Krstic 'authorized and verified the release of this fuel . . . for the purposes of the execution and reburial [of Muslims].'"  There is no indication in the record, however, that Krstic intended that the fuel assist in the execution of the Srebrenica Massacre.

Similarly, the dissent is mistaken in stating that "Krstic gave the order to release" fuel used in the genocide.  The uncontested evidence established that Krstic's signature was necessary to secure already-ordered supplies—not that Krstic himself gave orders to disburse fuel.

sufficient to grant Krstic's petition for review and remand to the BIA. As a result, we need not proceed to the second step of the persecutor bar analysis.

**3.** Krstic next challenges the agency's denial of a waiver of inadmissibility under 8 U.S.C. § 1227(a)(1)(H). The BIA denied Krstic such a waiver because it concluded that he had "participated" in "genocide" or "extrajudicial killing" under 8 U.S.C. § 1227(a)(4)(D). The same test for the persecutor bar applies to the section 1227(a)(4)(D) bar in determining whether an applicant for a waiver of inadmissibility is eligible for such a waiver. *See Matter of D-R-*, 25 I. & N. Dec. 445, 452 (BIA 2011).

For the same reasons the agency erred in finding Krstic subject to the persecutor bar, it erred here too. Krstic appears to request that we go one step further and affirmatively find that he merits a discretionary waiver of inadmissibility. But, as the government points out, it is not for this court to decide whether Krstic is entitled to relief that the statute entrusts to the Attorney General's discretion. As a result, we grant Krstic's petition for review on this claim and remand to the BIA to determine whether he merits a favorable exercise of discretion.

**4.** Finally, Krstic argues that "the BIA and IJ failed to articulate how and why the charges of removability were proven by clear and convincing evidence." The government counters that Krstic's failure to raise this claim before the BIA

means that this court lacks jurisdiction to decide the question. We agree. *See* 8 U.S.C. § 1252(d)(1); *see also Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam). We therefore dismiss Krstic's petition for review on this claim.

Petition **GRANTED IN PART**, **DENIED IN PART**, and **DISMISSED IN PART**.

***Krstic v. Barr,* Case No. 17-72542**
**Rawlinson, Circuit Judge, concurring in part and dissenting in part:**

I concur in the majority's conclusion that the agency's adverse credibility determination was supported by substantial evidence. I also agree that we lack jurisdiction to consider the unexhausted assertion of Petitioner Milenko Krstic (Krstic) that the agency failed to articulate how the charges of removability satisfied the "clear and convincing evidence" standard.

However, I respectfully dissent from the majority's conclusion that the agency's imposition of the persecutor bar and the accompanying denial of a waiver of inadmissibility warrants a remand.

As a preliminary matter it is important to delineate the framework for assessing the agency's application of the persecutor bar. The government has the initial burden of presenting "threshold evidence" that the Petitioner had "personal involvement" in and provided "purposeful assistance" to the persecution of others. *Budiono v. Lynch*, 837 F.3d 1042, 1048 (9th Cir. 2016) (citation omitted). Once that threshold showing is made by the government, the burden of proof shifts to the applicant to establish that he did NOT engage in persecution. *See id.* The agency's determination that "the necessary elements of [the petitioner's] personal assistance in acts that furthered the persecution of others have been established" is

1

reviewed for substantial evidence. *Miranda Alvarado v. Gonzales*, 449 F.3d 915, 929 (9th Cir. 2006). Under this stringent standard of review, a determination contrary to that reached by the agency must be compelled for relief to be granted by this court. *See Arteaga v. Mukasey*, 511 F.3d 940, 944 (9th Cir. 2007).

The majority makes no effort to grapple with this demanding standard. Instead, it essentially conducts a *de novo* review.

Appropriately applied, the substantial evidence standard of review mandates denial of this petition. The agency presented evidence through its expert witness Michael MacQueen (MacQueen) a historian, who testified regarding the Bosnian conflict, records associated with the Zvornik Infantry Brigade and documentation from the International Criminal Tribunal for the former Yugoslavia. It is undisputed that the Petitioner was a member of the Zvornik Infantry Brigade.

MacQueen had testified as an expert in over thirty matters involving the Bosnian War. He had "examined dozens of cases and literally tens of thousands of pages of witness and perpetrator testimony and documents submitted in evidence, contemporary documents from the war." MacQueen specified that he possessed "the entirety of the documentation" for the two infantry brigades that committed the Srebrenica massacre of over one thousand Muslim prisoners, the largest of which was Krstic's Zvornik Infantry Brigade. Indeed, MacQueen noted that "most

2

of the killings associated with Srebrenica actually took place within the operational zone of the Zvornik [I]infantry [B]rigade." He added that the Commander of the Zvornik Infantry Brigade and two others were convicted of genocide and mass murder.

MacQueen related that the Zvornik Infantry Brigade was "extremely bureaucratized" with "meticulous record keeping practices."

MacQueen pinpointed Krstic's rank as that of "Major Lieutenant Colonel" in the position of Chief of Technical Services (Logistics) located in the same buildings as the other section chiefs, at least one of which pled guilty to mass murder "with respect to the Srebrenica genocide." At the time of the Srebrenica genocide, Krstic was "responsible for monitoring and administering all flows of fuel, munitions, motor vehicles, and weapons, obtaining them from other parts of the [A]rmy . . . and assigning them to the component units of the Zvornik [B]rigade." Krstic's rank "gave him full military authority to give orders and ensure that these orders were indeed carried out."

The record reflects that Krstic gave the order to release "500 liters of scarce D2 diesel fuel" to Lieutenant Colonel Popovic, who directed the genocide. Indeed, a conversation was intercepted reflecting "that Popovic's work is going to come to [a] halt unless he gets . . . these 500 liters of fuel." Krstic personally verified the

delivery of the fuel, its recipient, and its intended use. The government's expert witness left no doubt that Krstic "authorized and verified the release of this fuel . . . for the purposes of the execution and reburial [of Muslims]."[1] In the face of this substantial evidence of Krstic's personal involvement in the massacre, it is impossible to conclude that a result contrary to that reached by the agency is compelled. *See Arteaga*, 511 F.3d at 944. I respectfully dissent.

---

[1]This testimony refutes the majority's assertion that Krstic did not order the release of the fuel and that the record does not reflect Krstic's intent. In any event, it was Krstic's burden to establish that he did not engage in persecution, a burden he failed to satisfy. *See Budino*, 837 F.3d at 1048.