**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 7 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RGY,

           Petitioner,

   v.

MERRICK B. GARLAND, Attorney
General,

           Respondent.

No.   20-71729

Agency No. A043-369-951

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 7, 2021
Portland, Oregon

Before:  O'SCANNLAIN, PAEZ, and BENNETT, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge PAEZ

    RGY petitions for review of an order by the Board of Immigration Appeals

(BIA) dismissing his appeal from a denial of his applications for withholding of

removal and relief under the Convention Against Torture (CAT).  The facts are

known to the parties, so we repeat them only as necessary.

I

---

     *     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Substantial evidence supports the BIA's conclusion that RGY failed to show that if he were removed to Mexico, he likely would be tortured within the meaning of the CAT. *See* 8 C.F.R. § 1208.16(c)(2).

A

Between 2006 and 2012, RGY was deported three separate times and lived in Mexico for a short period after each deportation. In total, RGY has lived in Mexico for approximately five-and-a-half months. He concedes that he was never tortured there, but past torture is "ordinarily the principal factor on which we rely" when assessing the risk of future torture upon removal. *Gomez Fernandez v. Barr*, 969 F.3d 1077, 1091 (9th Cir. 2020) (quoting *Nuru v. Gonzales*, 404 F.3d 1207, 1218 (9th Cir. 2005)).

RGY argues instead that he faces threats of torture in connection with past altercations and disputes with criminals in Mexico. A local gang leader threatened RGY in 2006 or 2007, but the leader has not contacted or threatened RGY since the single episode over a decade ago. RGY and his family also received threats over the telephone related to his agreement to help distribute methamphetamine for a Mexican cartel, but RGY has not heard from the threatening caller since 2014. RGY has been involved in a few physical altercations as well, but he has never sustained serious injuries.

Overall, RGY's fear that he will be tortured relies on a speculative "series of

events, all of which must happen for torture to occur." *Medina-Rodriguez v. Barr*, 979 F.3d 738, 750 (9th Cir. 2020). Because of the absence of past torture or credible ongoing threats of torture, RGY has not shown a likelihood of each step in the causal chain, and the record does not compel the conclusion that he is more likely than not to be tortured in Mexico.

B

Second, substantial evidence supports the BIA's determination that RGY failed to show that he would be tortured by or with the acquiescence of the Mexican government. RGY offered evidence of government corruption and ineffective law enforcement, but such general evidence does not compel the conclusion that officials would acquiesce in RGY's torture. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 363 (9th Cir. 2017) ("Police ineffectiveness is not enough to establish an entitlement to relief . . . ."); *Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016) ("[A] general ineffectiveness on the government's part to investigate and prevent crime will not suffice to show acquiescence."); *Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014). To the contrary, the record contains ample evidence—country reports, news reports, and expert testimony— from which the BIA could conclude that Mexico "actively, albeit not entirely successfully, combats the illegal activities." *Del Cid Marroquin v. Lynch*, 823 F.3d 933, 937 (9th Cir. 2016) (per curiam). Consequently, RGY has not carried his

3

burden under the CAT to show governmental acquiescence.

II

Substantial evidence supports the BIA's determination that RGY did not show a clear probability of future persecution in Mexico based on his membership in a particular social group. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(b).

RGY's proposed group, long-term U.S. residents with visible gang tattoos who have been deported to Mexico is not cognizable because the group lacks particularity and distinction. The group is too broad to constitute a discrete and narrowly defined class of persons. *See, e.g.*, *Barbosa v. Barr*, 926 F.3d 1053, 1059–60 (9th Cir. 2019); *Ramirez-Munoz v. Lynch*, 816 F.3d 1226, 1228–29 (9th Cir. 2016) ("[I]f a persecutor does not actually rely on specific boundaries or definitions to identify the group, it may be more difficult to believe that a collection of individuals is in fact perceived as a group." (quoting *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1091 (9th Cir. 2013) (en banc))); *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151–52 (9th Cir. 2010) (per curiam).

We have rejected as non-cognizable a very similar proposal, "American Salvadorian U.S. gang members of a Chicano American street gang," in a case that also involved visible gang tattoos. *Arteaga v. Mukasey*, 511 F.3d 940, 942 (9th Cir. 2007). We unambiguously concluded that "[t]attooed gang member" is "an overbroad category" that is not "sufficiently particular," so the group falls outside

our understanding of the term "particular social group." *Id.* at 945. We also rejected another, similar proposal—former gang members with tattoos—as being "far too unspecific and amorphous to be called a social group." *Id.* at 946.

RGY attempts to distinguish *Arteaga* on the ground that the petitioner's claim centered on his "shared experience as a gang member." But the *Arteaga* court also reviewed the petitioner's contention, much like RGY's here, that he would be "identified as a gang member because of his tattoos," which made him "visible to the police and other gang members," *Id.* at 945. The agency properly considered that RGY may face heightened risks because of his gang tattoos and criminal history, but such facts do not compel the conclusion that his proposed group is particular and distinct.

Neither RGY nor the dissent points to any facts of the case at hand—and we do not identify any—that caution against applying *Arteaga* here. *See Donchev v. Mukasey*, 553 F.3d 1206, 1220 (9th Cir. 2009) ("The traditional common law approach, looking at . . . commonalities in cases that go one way or the other, is . . . prudent" when determining what counts as a particular social group.).[1]

_____

[1] The BIA also determined that potential retaliation by criminals for RGY's past conduct bears no relationship to RGY's membership in a particular social group; in other words, membership in such a group would not be "a reason" for anticipated persecution. *Barajas-Romero*, 846 F.3d at 356–57. In light of our conclusion that RGY has not shown membership in a particular social group, however, we need not reach the nexus issue.

**PETITION FOR REVIEW DENIED.**

*RGY v. Garland*, No. 20-71729

Paez, J., concurring in part and dissenting in part:

The framework for determining whether a non-citizen has shown persecution on account of membership in a particular social group is well-established. Yet, when considering RGY's proposed particular social group, both the immigration judge ("IJ") and the Board of Immigration Appeals ("BIA") conducted the type of truncated analysis that this court—and the BIA—have repeatedly cautioned against. Because the majority repeats this error, I respectfully dissent.[1]

The agency erred in determining that RGY's proposed particular social group, characterized as long-term residents of the United States with visible gang tattoos who are deported to Mexico, was not cognizable.[2]

To determine whether a proposed particular social group is cognizable, we consider whether the group is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Vasquez-Rodriguez v. Garland*, ___ F.4th ___,

---

[1] I join Part I.A. of the majority disposition, which is a sufficient basis to deny RGY's claim for protection under the Convention Against Torture ("CAT").
[2] "Where, as here, the BIA cites *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994) and also provides its own review of the evidence and law, we review both the IJ's and the BIA's decisions." *Flores-Vega v. Barr*, 932 F.3d 878, 886 (9th Cir. 2019) (citation and brackets omitted).

1

___, 2021 WL 3413164, at *7 (9th Cir. 2021) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)).

In my view, the agency erred by failing to make any findings related to the particularity and social distinction prongs. "To be consistent with its own precedent, the BIA may not reject a group solely because it had previously found a similar group in a different society to lack social distinction or particularity . . . ." *Pirir-Boc v. Holder*, 750 F.3d 1077, 1084 (9th Cir. 2014). Rather, "the agency must make a case-by-case determination as to whether the group is recognized *by the particular society in question*." *Id.* (emphasis added); *see also Vasquez-Rodriguez*, ___ F.4th at ___, 2021 WL 3413164, at *7 (same); *Diaz-Torres v. Barr*, 963 F.3d 976, 980 (9th Cir. 2020) (explaining that "the inquiry is necessarily conducted case-by-case, country-by-country, and, in some cases, region-by-region"); *M-E-V-G-*, 26 I. & N. Dec. at 241.

We have twice reaffirmed this principle in the last month. In *Vasquez-Rodriguez v. Garland*, we reviewed a prior BIA decision that rejected a proposed social group of "young persons who are perceived to be affiliated with gangs." *Vasquez-Rodriguez*, ___ F.4th at ___, 2021 WL 3413164, at *6 (citation omitted). We explained that, although the BIA had "relied on *Arteaga v. Mukasey*, 511 F.3d 940 (9th Cir. 2007)," it failed to "address any society-specific evidence relevant to whether the proposed group was distinct within the society in question." *Id.* We

2

therefore held that the BIA's categorical legal rule was "inconsistent with the requisite fact-based analysis of proposed particular social groups" and remanded for full consideration of the petitioner's claim. *Id.* at *7.

We addressed precisely the same issue in *Plancarte v. Garland*. ___ F.4th ___, ___, 2021 WL 3700406, at *6 (9th Cir. 2021). There, the BIA concluded that "female nurses" are not a cognizable group "because being a nurse, like being a taxi driver, is not an immutable characteristic." *Id.* But because the BIA failed to "provide any meaningful analysis about the immutability of 'female nurses'" and instead "simply cited" to a prior BIA decision, we held that the lack of analysis "alone was error." *Id.*

The same is true here. After assuming RGY's tattoos were immutable, the IJ failed to acknowledge or "address any society-specific evidence" relating to particularity and social distinction. *Vasquez-Rodriguez*, ___ F.4th at ___, 2021 WL 3413164 at *6; *see Plancarte*, ___ F.4th at ___, 2021 WL 3700406, at *6. The IJ's analysis contains precisely the same errors that we identified in *Plancarte*, *Vasquez-Rodriguez*, and *Pirir-Boc*.[3]

---

[3] Nor can the BIA's reasoning save the IJ's decision. Like the IJ, the BIA ignored significant evidence supporting RGY's proposed group. Further, the BIA could not have made the requisite findings on its own, as "neither the BIA nor the Ninth Circuit is authorized to undertake the initial factfinding necessary to determine the viability of the group." *See Alanniz v. Barr*, 924 F.3d 1061, 1069 (9th Cir. 2019).

The majority repeats the agency's mistakes. The majority does not, indeed cannot, distinguish between the particularity and social distinction requirements because there are no factual findings from the agency on which to rely. Instead, like the IJ, the majority cites to cases holding that imputed wealthy individuals removed to Mexico from the United States are not a sufficiently discrete group. *See, e.g.*, *Barbosa v. Barr*, 926 F.3d 1053, 1059-60 (9th Cir. 2019). But those cases are significantly different from RGY's proposed group, which identifies long-term residents who have visible gang tattoos. *See Conde Quevedo v. Barr*, 947 F.3d 1238, 1242 (9th Cir. 2020) ("The agency may not reject a proposed social group without considering the evidence in the record that a specific society recognizes the group.").

Additionally, the majority characterizes RGY's proposed group as "very similar" to the group we rejected in *Arteaga*. But individuals with visible gang tattoos are not equivalent to actual members of a particular American street gang. *See Vasquez-Rodriguez*, ___ F.4th at ___, 2021 WL 3413164, at *7 (holding *Arteaga* does not control where the proposed group is persons with tattoos who are erroneously believed to be gang members). And neither this court nor the BIA can reject a group "solely because" it determined "a similar group in a different society" was not cognizable. *Id.* (quoting *Pirir-Boc*, 750 F.3d at 1084); *Plancarte*, ___ F.4th at ___, 2021 WL 3700406, at *6. Thus, by failing to "address any

4

society-specific evidence relevant to whether the proposed group was distinct within [Mexico]," *Vasquez-Rodriguez*, ___ F.4th at ___, 2021 WL 3413164, at *6, the majority's determination bears little resemblance to "the requisite fact-based analysis," *id.* at *7. *See also Plancarte*, ___ F.4th at ___, 2021 WL 3700406, at *6; *Diaz-Torres*, 963 F.3d at 980; *Conde Quevedo*, 947 F.3d at 1242; *Pirir-Boc*, 750 F.3d at 1084.

Moreover, "case-by-case determination" of a proposed group is essential "where, as here, [the agency] is presented with evidence showing that the proposed group may in fact be recognized by the relevant society." *Pirir-Boc*, 750 F.3d at 1084; *see Conde Quevedo*, 947 F.3d at 1242. RGY offered significant evidence supporting his proposed group. His expert witness explained that "tattoos are strongly associated with gangs" in Mexico, and that "individuals identified as gang members, whether correctly or incorrectly, would be at high risk for government abuses." That type of misidentification "is likely to occur if [the individuals] have gang tattoos or tattoos erroneously perceived to be gang-related," and "the risk may be particularly high if the individual is returning from the U.S., as it is well documented that gangs in this country are deeply involved with [transnational criminal organizations] in Mexico." The expert also stated that deportees returning to Mexico from the United States "are immediately recognizable" due to their accents, social attitudes, physical mannerisms, and modes of dress. RGY further

testified that he was harassed by police officers in Mexico after being identified as someone returning from the United States. He stated that because people in Mexico see his tattoos and recognize that he spent significant time in the United States, they believe he is part of a gang or other human trafficking group. The agency erred in failing to consider this evidence. *Conde Quevedo*, 947 F.3d at 1242.

Because the BIA's determination was "inconsistent with the requisite fact-based analysis of proposed particular social groups," I would grant the petition and remand to the agency for full consideration of RGY's proposed particular social group. *Vasquez-Rodriguez*, ___ F.4th at ___, 2021 WL 3413164, at *7; *see also Plancarte*, ___ F.4th at ___, 2021 WL 3700406, at *6; *Pirir-Boc*, 750 F.3d at 1084.