**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

OLIVERTO PIRIR-BOC,
*Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney General,
*Respondent*.

No. 09-73671

Agency No.
A200-033-237

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 10, 2014—San Francisco, California

Filed May 7, 2014

Before: Stephen Reinhardt and Sidney R. Thomas, Circuit
Judges, and William K. Sessions, District Judge.[*]

Opinion by Judge Reinhardt

---

[*] The Honorable William K. Sessions III, District Judge for the U.S. District Court for the District of Vermont, sitting by designation.

## SUMMARY**

### Immigration

The panel granted a petition for review of the Board of Immigration Appeals' denial of asylum, withholding of removal, and protection under the Convention Against Torture, and remanded for further consideration in light of *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1083 (2013) (en banc), *Matter of W-G-R-*, 26 I. & N. Dec. 208 (2014), and *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (2014).

Petitioner asserted a fear of persecution by gangs in Guatemala on account of his membership in a particular social group characterized as individuals "taking concrete steps to oppose gang membership and gang authority." The panel first held that the Board's recent decisions in *Matter of W-G-R* and *Matter of M-E-V-G* did not affect the construction of social group set forth by the en banc court in *Henriquez-Rivas*, with the qualification that the persecutors' perception is not itself enough to make a group socially distinct, and persecutory conduct alone cannot define the group, rather, the persecutor's perspective is one factor among others to be considered in determining a group's social visibility.

The panel noted that the critical issue in each of the new Board decisions is whether there is evidence to support social recognition of the proposed group, and the panel explained that to be consistent with its own precedent, the Board may not reject a group solely because it previously found a similar

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

group in a different society to lack social distinction or particularity. Because the Board in this case did not perform the required evidence-based inquiry as to whether Guatemalan society recognizes petitioner's proposed social group, the panel remanded to the Board for reconsideration in light of *Henriquez-Rivas*, *Matter of W-G-R* and *Matter of M-E-V-G.*

The panel explicitly did not decide whether the Board's requirements of "social distinction" and "particularity" constitute a reasonable interpretation of the term "particular social group."

The panel remanded petitioner's CAT claim for the Board to provide a reasoned explanation of the basis for its decision.

---

**COUNSEL**

Roger S. Green (argued) and Jenny Tsai, Green & Tsai, San Francisco, California, for Petitioner.

Dawn S. Conrad (argued), Sarah L. Vuong, and Kimberly A. Burdge, Trial Attorneys; Song Park, Senior Litigation Counsel; Tony West and Stuart F. Delery, Assistant Attorneys General; Emily Anne Radford, Assistant Director, United States Department of Justice, Office of Immigration Litigation, Civil Division, Washington, D.C., for Respondent.

**OPINION**

REINHARDT, Circuit Judge:

Oliverto Pirir-Boc ("Pirir-Boc") was granted asylum by the Immigration Judge ("IJ") based on his well-founded fear of persecution as a member of a particular social group characterized as individuals "taking concrete steps to oppose gang membership and gang authority." The Board of Immigration Appeals ("BIA") vacated the grant of asylum on the ground that Pirir-Boc's "purported social group lacks the requisite particularity and social visibility." Pirir-Boc filed a petition for review. After briefing was complete, this court issued the en banc decision, *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1083 (2013) (en banc), holding that "witnesses who testify against gang members" may be cognizable as a particular social group for the purposes of asylum. We then ordered supplemental briefing in this case. Three days before oral argument, the BIA issued two published decisions designed to clarify its interpretation of the phrase "particular social group": *Matter of W-G-R-*, 26 I. & N. Dec. 208 (2014), and *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (2014). We hold that these two decisions do not affect the validity of *Henriquez-Rivas*, and we remand Pirir-Boc's petition to the BIA for consideration in light of *W-G-R-*, *M-E-V-G-*, and *Henriquez-Rivas*.

**I**

The IJ granted Pirir-Boc asylum after finding his testimony credible. Pirir-Boc is a native and citizen of Guatemala who identifies as Cakchiquel, an indigenous minority ethnic group, and did not learn Spanish until age 10. He was recruited by the Mara Salvatrucha, a violent Central

American gang, but refused to join. His younger brother, however, joined the gang and pledged himself to it for life. Pirir-Boc viewed the Mara Salvatrucha as "criminals who rape women and rob people" and disapproved of his brother's decision to join. Within the hearing of members of the Mara Salvatrucha, Pirir-Boc told his brother that he must leave the gang. Pirir-Boc was eventually able to help his brother defect and move to their grandparents' village, three hours away.

After his brother left the gang, members of the Mara Salvatrucha came looking for Pirir-Boc at his home several times. He sent his wife and small child away and went into hiding in the cliffs. Gang members continued to look for him at all hours, but he evaded them by not returning home. When Mara Salvatrucha members had not come to his house for eight days, Pirir-Boc returned. Ten or eleven gang members caught him and beat him severely, telling him that "[he has] to die." He continues to suffer effects from that beating.

Out of the "fear of losing [his] life" and never being able to "sleep in [his] own house" again, Pirir-Boc fled Guatemala with his younger brother. His wife subsequently informed him that the Mara Salvatrucha was still looking for him in Guatemala.

The IJ found Pirir-Boc eligible for asylum based on his past persecution and his well-founded fear of future persecution "on account of his membership in a particular social group of persons taking concrete steps to oppose gang

membership and gang authority."[1]  She found that Pirir-Boc "took specific action to dissuade his brother from continuing in his membership in a criminal gang" and,

> by taking this action, allied himself with a particular social group of persons directly in opposition to gang activities and gang membership.  Although [Pirir-Boc] does not belong to an organization, per se, the Country Reports and background material . . . indicate that there are concerted efforts in Guatemala to combat gang activity.  The Court notes that voluntarily associating oneself with a group may be evidence of membership in a particular social group.

The IJ also found that Pirir-Boc "has been visible and outspoken in his actions against the gang."  In addition, she found that the authorities in Guatemala were unwilling or unable to protect him.  The IJ did not consider whether Pirir-Boc was eligible for relief under the Convention Against Torture ("CAT"), noting that he had not applied for such relief.

The government appealed the IJ's decision, and the BIA sustained the appeal and vacated the IJ's finding of eligibility. The BIA incorporated the IJ's fact-finding in its decision, noting that "[t]he facts of this case are not in dispute."  It then

---

[1] The IJ denied Pirir-Boc's application for asylum on the basis of his indigenous ethnicity and political opinion.  Pirir-Boc does not challenge that portion of the BIA's ruling and we do not address it here.

applied intervening authority from the BIA and this court[2] to those facts and held that the purported social group of "those who have taken direct action to oppose criminal gangs" was not meaningfully distinguishable from Salvadoran "youths who have resisted gang recruitment, or family members of such Salvadoran youth," the group the BIA had rejected in *Matter of S-E-G-*, 24 I. & N. Dec. 579, 582 (2008). The BIA decided that "[a]lthough the respondent was seen by gang members to tell his brother to leave the gang, his purported social group lacks the requisite particularity and social visibility" and reversed the IJ's finding of eligibility. The BIA denied Pirir-Boc's claim for withholding of deportation because he had failed to satisfy the less burdensome standard for asylum. The BIA also rejected Pirir-Boc's claim for relief under the Convention Against Torture, finding that he had "failed to establish a *prima facie* case for eligibility" for that type of relief.

## II

We review questions of law de novo. *Cordoba v. Holder*, 726 F.3d 1106, 1113 (9th Cir. 2013). Whether a group constitutes a "particular social group" is a question of law. *Mendoza-Alvarez v. Holder*, 714 F.3d 1161, 1163 (9th Cir. 2013). The BIA's construction of ambiguous statutory terms in precedential decisions is entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,

---

[2] The BIA applied *S-E-G-*, 24 I. & N. Dec. 579, which was decided after the IJ's decision but before *W-G-R-*, 26 I. & N. Dec. 208, and *M-E-V-G-*, 26 I. & N. Dec. 227. It also noted *Ramos-Lopez v. Holder*, 563 F.3d 855 (9th Cir. 2009), and *Santos-Lemus v. Mukasey*, 542 F.3d 738 (9th Cir. 2008), which were issued following the IJ's decision in Pirir-Boc's case but before our en banc decision in *Henriquez-Rivas*, which partially overruled them. *Henriquez-Rivas*, 707 F.3d at 1093.

467 U.S. 837, 844 (1984).  *Henriquez-Rivas*, 707 F.3d at
1087; *Lezama-Garcia v. Holder*, 666 F.3d 518, 524 (9th Cir.
2011).  We must accept the BIA's construction if it is
reasonable.  *Henriquez-Rivas*, 707 F.3d at 1087 (citing *Nat'l
Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545
U.S. 967, 980 (2005)).

## III

## A

A petitioner is eligible for asylum if he is determined to
be a refugee within the meaning of section 101(a)(42)(A) of
the Immigration and Nationality Act ("INA"), 8 U.S.C.
§ 1101(a)(42)(A).  An individual qualifies as a refugee when
he is "unable or unwilling to return to [his last country of
residence] . . . because of persecution or a well-founded fear
of persecution on account of race, religion, nationality,
membership in a particular social group, or political opinion."
INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); *Cordoba*,
726 F.3d at 1108.

Pirir-Boc's petition involves the construction of the term
"particular social group."  Since the BIA considered Pirir-
Boc's petition, the term has been interpreted in an en banc
decision of this court, *Henriquez-Rivas v. Holder*, 707 F.3d
1081 (2013), and in two published decisions by the BIA, *W-
G-R-*, 26 I. & N. Dec. 208 (2014), and *M-E-V-G-*, 26 I. & N.
Dec. 227 (2014).  We first consider whether the BIA's new
decisions affect the interpretation we set forth in *Henriquez-
Rivas*, and conclude that *Henriquez-Rivas* remains valid in
both holding and reasoning, with one minor qualification.

Prior to *Henriquez-Rivas*, the BIA defined "particular social group" as a group (1) that consisted of people who share an "immutable characteristic 'so fundamental to one's identity that a person should not be required to abandon it,'"[3] *Henriquez-Rivas*, 707 F.3d at 1084 (quoting *Hernandez-Montiel v. INS*, 225 F.3d 1084, 1093 (9th Cir. 2000)); and (2) that had what the BIA called "social visibility" and "particularity." *Henriquez-Rivas*, 707 F.3d at 1084–85. In *S-E-G-*, the BIA had found that a proposed social group of "Salvadoran youth who have been subjected to recruitment efforts by MS-13 and who have rejected or resisted membership in the gang based on their own personal, moral, and religious opposition to the gang's values and activities" did not have "particularity" because it was too "amorphous," and that it did not have "social visibility" because there was little evidence that such youths would be "perceived as a group by society." *Henriquez-Rivas*, 707 F.3d at 1085; *S-E-G-*, 24 I. & N. Dec. at 584–85, 587.

In *Henriquez-Rivas* we considered whether witnesses who testify against gang members constitute a particular social group under the BIA's precedent. 707 F.3d at 1081. As in Pirir-Boc's case, the IJ found Henriquez-Rivas eligible for asylum but the BIA reversed that determination, holding that

---

[3] "Immutability" is not at issue here, and, in any event, Pirir-Boc's proposed group clearly satisfies the BIA's standard. The steps Pirir-Boc took in opposition to the gang are a "shared past experience" and "something . . . that cannot be changed." *W-G-R-*, 26 I. & N. Dec. at 212–13 ("In *Acosta* we determined that any characteristic that defines a particular social group must be immutable . . . . The defining characteristic can be an innate characteristic or a shared past experience. The critical requirement is that the defining characteristic of the group must be something that either cannot be changed or that the group members should not be required to change in order to avoid persecution.").

the proposed social group "lacks the requisite social visibility." *Id.* at 1091. The BIA did not fully explain its position, but instead cited *S-E-G-* and other cases now subject to the revised standard of *W-G-R-* and *M-E-V-G-*. *Id.* We vacated the BIA's decision, holding that the BIA had "erroneously assumed" that the putative social group was not cognizable under its precedent, and that because of this erroneous assumption, the BIA had ignored "significant evidence" that Salvadoran society recognizes the group in question as a particular social group. *Id.* at 1092. We noted that the evidence before the BIA strongly suggested that the putative group had sufficient social visibility—which, we clarified, refers to "'perception' rather than 'on-sight visibility,'"[4] *id.* at 1089, 1092–93—and sufficient particularity to be cognizable. We remanded to the BIA for further proceedings so that it could consider that evidence. *Id.* at 1094.

The BIA took up these issues in a pair of precedential decisions. In *W-G-R-*, the BIA considered the putative social

---

[4] The BIA agreed with this clarification in *W-G-R-* and *M-E-V-G-*, and changed the name of the concept from "social visibility" to "social distinction" in order to emphasize that a social group need not be "ocularly visible" but instead must "exist as a recognized component of the society in question." *W-G-R-*, 26 I. & N. Dec. at 217; *M-E-V-G-*, 26 I. & N. Dec. at 240–41. "To have the 'social distinction' necessary to establish a particular social group, there must be evidence showing that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group." *W-G-R-*, 26 I. & N. Dec. at 217. "Social distinction" thus appears to be equivalent to our interpretation of "social visibility" in *Henriquez-Rivas*, 707 F.3d at 1088–89 (requiring "that the shared characteristic generally be recognizable by other members of the community, or evidence that members of the proposed group would be perceived as a group by society.") (internal quotation marks and citations omitted).

group of "former members of the Mara 18 gang in El Salvador who have renounced their gang membership" and rejected it as a social group due to a lack of evidence to that effect introduced at the proceedings. 26 I. & N. Dec. at 221. The BIA rejected the group on the ground that the record contained no evidence demonstrating that Salvadoran society recognized former gang members who have renounced their gang membership as a distinct social group. *Id.* at 222. The record contained "documentary evidence describing gangs, gang violence, and the treatment of gang members but very little documentation discussing the treatment or status of former gang members." *Id.* The "scant evidence" provided by W-G-R- was insufficient to meet the social distinction requirement. *Id.* The BIA also found that the proposed group lacked particularity because "the boundaries of a group are not sufficiently definable unless the members of society generally agree on who is included in the group, and evidence that the social group proposed . . . is recognized within the society is lacking in this case." *Id.* at 221. "The group would need further specificity to meet the particularity requirement." *Id.*

In *M-E-V-G-*, decided on the same day as *W-G-R-*, the BIA declined to make a ruling on whether Honduran youths who were actively recruited by gangs but who refused to join constituted a particular social group because further fact-finding was required. 26 I. & N. Dec. at 251. The BIA stated that there is no "blanket rejection of all factual scenarios involving gangs" and that "[s]ocial group determinations are made on a case-by-case basis." *Id.* Because the BIA's "guidance on particular social group claims ha[d] been clarified" since the IJ had last considered the question, it remanded the case to "enable the Immigration Judge to

engage in any fact-finding that may be necessary to resolve the issues in this case." *Id.* at 251–52.**[5]**

The new BIA decisions *W-G-R-* and *M-E-V-G-* are consistent**[6]** with *Henriquez-Rivas*, in which the thrust of our

---

**[5]** Although the BIA did not explain why it decided not to remand *W-G-R-* for further fact-finding but did so in *M-E-V-G-*, it seems apparent that there was no purpose in a remand in the former case because the BIA held that there was no nexus and thus no reason to develop further facts as to the social group issue. *W-G-R-*, 26 I. & N. Dec. at 223.

**[6]** The new BIA decisions are consistent with *Henriquez-Rivas*, with one qualification. In *Henriquez-Rivas*, we suggested that the perspective of the persecutor may be the most important perspective in determining whether a group has sufficient social visibility or distinction, but left it to the BIA to decide that issue in the first instance. 707 F.3d at 1089. In the new decisions, the BIA declined to adopt this suggestion. It decided that "the persecutors' perception is not itself enough to make a group socially distinct, and persecutory conduct alone cannot define the group," but allowed that the persecutor's perspective is one factor among others to be considered in determining a group's social visibility. *M-E-V-G-*, 26 I. & N. Dec. at 242. The BIA noted, however, at least two ways in which the "perception of the applicant's persecutors may be relevant." *Id.* First, the persecution of a group may cause a group for the first time to recognize itself and be recognized by society as a group. *Id.* For instance, taking the example of a proposed social group of former employees of a country's attorney general, the BIA explained that such employees may not consider themselves to be a separate group until they are mistreated by a persecutor. "Upon their maltreatment, it is possible that these people would experience a sense of 'group,' and society would discern that this group of individuals, who share a common immutable characteristic, is distinct in some significant way." *Id.* at 243. Second, the persecutor's perceptions may be relevant in cases involving persecution on account of "imputed" grounds, where "one is erroneously thought to hold particular political opinions or mistakenly believed to be a member of a particular social group." *Id.*

Thus, while the BIA did not give the persecutor's perspective the

holding was that the BIA had ignored specific evidence of whether Salvadoran society considered witnesses who testified against gang members to be a social group. The critical issue in each of the new decisions is whether there is evidence to support social recognition of the proposed group. In *W-G-R-* the BIA refused to find a social group because "evidence that the social group . . . is recognized within the society is lacking in this case," 26 I. & N. Dec. at 221, and in *M-E-V-G-* the BIA determined that the case-by-case analysis required remand for further factual development, 26 I. & N. Dec. at 251. The rule that thus emerges is the following: To determine whether a group is a particular social group for the purposes of an asylum claim, the agency must make a case-by-case determination as to whether the group is recognized by the particular society in question. To be consistent with its own precedent, the BIA may not reject a group solely because it had previously found a similar group in a different society to lack social distinction or particularity, especially where, as here, it is presented with evidence showing that the proposed group may in fact be recognized by the relevant society.[7]

---

same role in the analysis as the one we had recommended, it did give that perspective an important place. Regardless, to the extent that *W-G-R-* and *M-E-V-G-* do disagree with *Henriquez-Rivas* on this point, there is no real conflict because we explicitly "le[ft] it to the BIA to decide this issue in the first instance." *Henriquez-Rivas*, 707 F.3d at 1089.

[7] It is an error, for instance, to assume that if a social group related to the same international gang, such as the Mara Salvatrucha, has been found non-cognizable in one society, it will not be cognizable in any society. Honduras, El Salvador, Guatemala, Nicaragua, and Panama have used different strategies for combating gang violence, from anti-gang legislation to social rehabilitation and prevention programs. These different local responses to gangs in nations with distinct histories, populations, and government structures, may well result in a different social recognition of social groups opposed to gang violence, even if the

Here, the BIA did not perform the required evidence-based inquiry as to whether the relevant society recognizes Pirir-Boc's proposed social group.  It failed to consider how Guatemalan society views the proposed group, and it did not consider the society-specific evidence submitted by Pirir-Boc in the form of U.S. State Department Country Reports on Guatemala, a Congressional Research Service Report for Congress on Gangs in Central America with a section on Guatemala, and background documents including news articles and Amnesty International Reports on Guatemala. The IJ, in contrast, did consider that evidence and found that in openly opposing the Mara Salvatrucha in Guatemala, Pirir-Boc "allied himself with a particular social group of persons directly in opposition to gang activities."  The IJ found that there were "concerted efforts in Guatemala to combat gang activity" and that through his opposition to the Mara Salvatrucha in that country, Pirir-Boc was "voluntarily associating" himself with that group.  These are the type of findings that are relevant to determining "whether the people of a given society would perceive a proposed group as sufficiently separate or distinct to meet the 'social distinction' test."  *M-E-V-G-*, 26 I. & N. Dec. at 241.  "Evidence such as country conditions reports, expert witness testimony, and press accounts of discriminatory laws and policies, historical animosities, and the like may establish that a group exists and is perceived as 'distinct' or 'other' in a particular society." *Id.*

Because it is not clear to us from the record whether the evidence presented by Pirir-Boc is sufficient to meet the revised standard in *W-G-R-* and *M-E-V-G-*, we remand the petition to the BIA to consider Pirir-Boc's asylum claim in

gang in question is the same.

light of those decisions.  *See Cordoba*, 726 F.3d at 1117.
Because Pirir-Boc's claim for withholding of deportation was
denied solely on the basis of his failure to satisfy the burden
required for asylum, that claim is also remanded.  We also
advise the BIA to consider Pirir-Boc's petition in light of
*Henriquez-Rivas*, which addressed a group comparable to
Pirir-Boc's proposed group and found it to be potentially
cognizable.  In *Henriquez-Rivas*, the proposed group was
"witnesses who testify against gang members."  707 F.3d at
1083.  Here, the proposed group is "persons taking concrete
steps to oppose gang membership and gang authority."  The
concrete and open steps Pirir-Boc took in opposition to the
gang may fall within the framework of *Henriquez-Rivas*.

**B**

In remanding this case to the BIA, we do not decide
whether the BIA's requirements of "social distinction" and
"particularity" constitute a reasonable interpretation of
"particular social group."  We owe deference to the agency's
construction of an ambiguous term, but only if the
interpretation is reasonable.  *See Brand X Internet*, 545 U.S.
at 981 ("If a statute is ambiguous, and if the implementing
agency's construction is reasonable, *Chevron* requires a
federal court to accept the agency's construction of the
statute, even if the agency's reading differs from what the
court believes is the best statutory interpretation.") (citation
omitted).  If we were to conclude that the BIA's interpretation
is not reasonable, we need not accept it; two circuits have in
fact heretofore invalidated the BIA's previous formulation of

the criteria of "particularity" and "social visibility."**[8]**    In *Henriquez-Rivas*, we held that the term "particular social group" is ambiguous, but we declined to decide whether the agency's construction was reasonable.    707 F.3d at 1087, 1091.

Here, once again, we leave open the question of whether the BIA's construction of "particular social group" is reasonable.  First, we have not been asked to do so.  Second, and more important, as is clear from *W-G-R-* and *M-E-V-G-*, the term is in flux, and it is premature to determine precisely how the rule will be implemented.  After the BIA has on remand had the opportunity to apply the revised rule to this case, we may be in a better position to determine whether its revised construction of the term is reasonable.

## IV

To qualify for CAT relief, Pirir-Boc must show that "it is more likely than not that he . . . would be tortured if removed" to Guatemala.  *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011) (quoting 8 C.F.R. § 208.16(c)(2)).  He does not need to show that he would be tortured on account of a

---

[8] The Third and Seventh Circuits invalidated the pre-*W-G-R-*/*M-E-V-G-* "particularity" and "social visibility" requirements on the ground that they were inconsistent with prior BIA precedent and therefore were not entitled to *Chevron* deference.  *See Valdiviezo-Galdamez v. Att'y Gen. of U.S.*, 663 F.3d 582, 604 (3d Cir. 2011) ("Since the 'social visibility' requirement is inconsistent with past BIA decisions, we conclude that it is an unreasonable addition to the requirements for establishing refugee status where that status turns upon persecution on account of membership in a particular social group."); *Gatimi v. Holder*, 578 F.3d 611, 615 (7th Cir. 2009) (holding that the interpretation of "social visibility" is inconsistent with previous decisions and "makes no sense").

protected ground. *Kamalthas v. I.N.S.*, 251 F.3d 1279, 1283 (9th Cir. 2001). The BIA denied Pirir-Boc relief under CAT in a single sentence,[9] stating that he "has failed to establish a *prima facie* case for eligibility for relief under the Convention Against Torture." The BIA gave no explanation for its decision; nor did it mention any evidence that it had considered. "In order for the court to exercise our limited authority, there must be a reasoned explanation by the BIA of the basis for its decision." *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (citing *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005)). Under the regulations, "[i]n making a CAT decision, . . . '*all* evidence relevant to the possibility of future torture *shall* be considered." *Cole*, 659 F.3d at 771 (quoting 8 C.F.R. 1208.16(c)(3)). While the BIA is not required to "discuss each piece of evidence submitted," where there is "any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include . . . failing to mention highly probative or potentially dispositive evidence." *Id.* at 771–72.

We therefore remand Pirir-Boc's CAT claim to the BIA for reconsideration. *See Movsisian*, 395 F.3d at 1099; *Tapia Madrigal v. Holder*, 716 F.3d 499, 509 (9th Cir. 2013).

---

[9] The IJ failed to grant Pirir-Boc relief under CAT because he did not specifically request that relief. However, a CAT claim is sufficiently raised when an alien declares his fear of future torture on his asylum application and provides supporting evidence during the removal hearing. *Nuru v. Gonzales*, 404 F.3d 1207, 1223 n.13 (9th Cir. 2005). Here, on his I-589 asylum application, Pirir-Boc answered "yes" to the question "Are you afraid of being subjected to torture in your home country . . . ?" He also provided evidence in the form of a State Department Report that the government would be unable or unwilling to protect him.

\*

For the reasons stated above, we grant Pirir-Boc's petition for review with respect to his claims for asylum based on a particular social group, withholding of removal, and relief under CAT, and remand the claims to the BIA for further consideration consistent with this opinion.

Petition **GRANTED** and **REMANDED**.