**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MIGUEL DIAZ-TORRES,
                              *Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
                              *Respondent.*

Nos.   18-70141
         18-72700

Agency No.
A089-247-266

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 2, 2020*
Seattle, Washington

Filed June 29, 2020

Before:  Sandra S. Ikuta, Ryan D. Nelson, and
Danielle J. Hunsaker, Circuit Judges.

Opinion by Judge R. Nelson

---

* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**SUMMARY**[**]

**Immigration**

Denying a petition for review of the Board of Immigration Appeals' denial of asylum and withholding of removal, the panel held that petitioner had not met his burden of establishing that his proposed social groups comprised of "Mexican professionals who refuse to cooperate with drug cartels" and "agronomists who refuse to help cultivate drugs" are socially distinct.

The panel explained that nothing in this record addresses whether Mexican society views either of petitioner's proposed social groups as distinct. For instance, no laws or proposed legislation, nor any country conditions reports or news articles, mention such a group. To the contrary, the evidence painted a picture of all segments of the Mexican population being adversely affected by the brutality of drug cartels. In addition, the panel explained that the expert testimony in this case did not bridge the gap to establish that Mexican society views petitioner's proposed groups as distinct, but rather indicated that almost anybody can be targeted by the drug cartels.

The panel also concluded that petitioner's testimony was insufficient to establish social distinction, because although some of his testimony indicated that cartel members view individuals like petitioner as targets for extortion or violence, it did not establish how society in general views

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

his proposed groups. The panel explained that the view of an applicant's persecutors does not inform the social distinction inquiry except to the extent it is indicative of whether society views the group as distinct. The panel further explained that an applicant's testimony alone is insufficient to establish the social distinction of a proposed group unless he satisfies the trier of fact that his testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the proposed group is socially distinct. Moreover, the panel stated that the social distinction inquiry encompasses principles that will ordinarily demand some type of corroborative, objective evidence. Because there was no such evidence here, the panel held that substantial evidence supported the Board's conclusion that petitioner failed to establish that his purported groups were socially distinct.

The panel addressed petitioner's remaining claims, and the denial of his motion to reopen, in a concurrently filed memorandum disposition.

## COUNSEL

Bernice Funk, Law Office of Bernice Funk, Seattle, Washington, for Petitioner.

Mona Maria Yousif, Trial Attorney; Brianne Whelan Cohen, Senior Litigation Counsel; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

R. NELSON, Circuit Judge:

Those seeking asylum and withholding of removal based on membership in a "particular social group" are required to show that the proposed group is recognizable as "socially distinct." This case requires us to decide whether the testimony of the applicant—without supporting documentary evidence—can satisfy the social distinction requirement. We conclude that the applicant's testimony was not sufficient, and therefore deny the petition for review.[1]

**I**

Miguel Diaz-Torres was born in Mexico and raised in the Mexican state of Sinaloa. He graduated from the Autonomous University of Sinaloa with a degree in Agricultural Sciences and worked for the Mexican government as an agricultural engineer throughout Mexico. Nearly a decade later, Mr. Diaz-Torres returned to Sinaloa to work at a tire store while doing agricultural consulting on the side.

As part of his consulting, Mr. Diaz-Torres was asked by two men to look at a crop of corn that "wasn't growing well." Mr. Diaz-Torres agreed to do so and went with the men to the corn field. He observed corn growing only on the exterior of the field. On the interior, marijuana was growing. Mr. Diaz-Torres nonetheless offered and was paid for his advice. This same scenario may have played out a second

---

[1] We reject the remaining arguments raised in Mr. Diaz-Torres's first petition for review, and deny his second petition for review, in a concurrently-filed memorandum disposition.

time during this period. Mr. Diaz-Torres testified that the individuals who approached him for help were members of the Sinaloa cartel.

Several years later, Mr. Diaz-Torres was again approached by cartel members, who were specifically looking for "Engineer Miguel." He was again asked for advice due to his expertise as an agricultural engineer. But this time, the men were more forthcoming, explicitly telling him they needed help growing marijuana. Mr. Diaz-Torres refused. The men told him if he did not help them, his "life was at risk." They told him to think about their offer and that they would return the next day. Mr. Diaz-Torres believed their threats to be credible given his knowledge of the cartels. So he fled Mexico and entered the United States without inspection.

Approximately seven years later, Mr. Diaz-Torres returned to Mexico, intending to permanently live with his aging mother in Sinaloa. After several months, he visited a shopping mall, where, by happenstance, he ran into the same two cartel members from the earlier threat. Those men again threatened him, telling him his life was not safe because he refused to help them. Fearing harm or worse, Mr. Diaz-Torres fled to his brother's home in a different region of Mexico, and then flew to Canada. From there, Mr. Diaz-Torres attempted to enter the United States and was detained at the border.

Mr. Diaz-Torres applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), arguing that he was a member of the particular social group of Mexican "professionals who refuse to cooperate with drug cartels." Mr. Diaz-Torres testified about the threats by members of drug cartels in Sinaloa for not cooperating with them. He also testified that

he knew of other Mexican professionals, including agricultural engineers, who had been killed for not cooperating with the cartels.

He also submitted documentary evidence, including news articles about Mexican professionals who were killed. The articles explained these deaths, but they did not identify the murderers or why each person was killed. He also submitted evidence about violence caused by the cartels in Mexico, including evidence that the cartels target and kill those who give tips to the police, those who help rival cartels, those in rival cartels, those who refuse to be extorted for money, and those politicians who try to stop them. There was no documentary evidence regarding cartels targeting Mexican professionals to seek their services. Nor was there documentary evidence showing that Mexican society views either of these groups as distinct.

Mr. Diaz-Torres's application also included an affidavit from Sylvia M. Longmire, M.A., an expert in Mexican criminal organizations. She testified about the advent of such organizations in Mexico, and about their leadership, criminal activities, and interaction with the Mexican government. She also testified that Mr. Diaz-Torres was likely to be targeted by Mexican drug cartels if removed to Mexico. She did not, however, opine on how those who refuse to provide professional services to cartels are viewed in Mexican society.

An immigration judge ("IJ") denied all relief and the Board of Immigration Appeals ("BIA") dismissed Mr. Diaz-Torres's appeal based in part on its conclusion that the group of "Mexican professionals" who refuse to cooperate with cartels was "not sufficiently discrete, nor does it have social visibility." But a panel of our Court remanded the case to the BIA for further consideration in light of intervening

cases addressing particular social group determinations, including *Pirir-Boc v. Holder*, 750 F.3d 1077 (9th Cir. 2014); *Cordoba v. Holder*, 726 F.3d 1106 (9th Cir. 2013); *Matter of W-G-R-*, 26 I. & N. Dec. 208 (BIA 2014); and *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014). The BIA remanded the matter to the immigration court.

On remand, Mr. Diaz-Torres presented a slightly different particular social group—"agronomists" who refuse to help cultivate drugs—as well as Mexican professionals who refuse to cooperate with cartels. He testified a second time, recounting the same story of threats for refusing to cooperate with the cartels. During his testimony, he was asked about the articles detailing the deaths of Mexican professionals. Mr. Diaz-Torres testified that he knew some of the men and knew that they were killed for refusing to cooperate with the cartels. He also testified that there is a particular term in Spanish used in Sinaloa for someone who has rejected a cartel's recruitment efforts—"esta comontado."

New evidence was also submitted. Ms. Longmire submitted an updated declaration and testified in court, for the first time, about the same general themes discussed in her declaration. Mr. Diaz-Torres also submitted a new article about an agricultural engineer who was killed in Mexico and several new articles about cartel-related violence and crime in Mexico.

The IJ denied relief, holding in part that Mr. Diaz-Torres's proposed social group of agronomists who refuse to cooperate with cartels did not meet the social distinction requirement because there was no evidence that the proposed group was "perceived as a group by society." Mr. Diaz-Torres appealed this ruling, among others, to the BIA. The BIA dismissed the appeal, holding that he had "not met his

burden to produce evidence demonstrating that his purported group is socially distinct." This timely petition for review followed.

## II

To establish eligibility for asylum, an applicant must show that he is "unable or unwilling" to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Similarly, an applicant is eligible for withholding of removal if his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

The Immigration and Nationality Act does not define "particular social group." The BIA has interpreted that term to include three components: (1) a group "composed of members who share a common immutable characteristic"; (2) "defined with particularity"; and (3) "socially distinct within the society in question." *Reyes v. Lynch*, 842 F.3d 1125, 1131 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 736 (2018) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 237). This case concerns the third requirement—social distinction—which we have held is a proper element, giving deference to the BIA. *Id.* at 1135–36.

Social distinction refers to whether "the people of a given society would perceive a proposed group as sufficiently separate or distinct." *Pirir-Boc*, 750 F.3d at 1084 (internal quotation marks omitted). This requirement refers to general social perception, which can be assessed from the perspective of "the society in question as a whole," "the residents of a particular region," or "members

of a different social group," depending of the facts of the case. *Cordoba*, 726 F.3d at 1115. It is not, however, assessed from the perspective of the persecutors. *Conde Quevedo v. Barr*, 947 F.3d 1238, 1242 (9th Cir. 2020).

To make the social-distinction determination, the agency must perform an "evidence-based" inquiry into "whether the relevant society recognizes [the petitioner's] proposed social group." *Pirir-Boc*, 750 F.3d at 1084. "Evidence such as country conditions reports, expert witness testimony, and press accounts of discriminatory laws and policies, historical animosities, and the like may establish that a group exists and is perceived as 'distinct' or 'other' in a particular society." *Id.* (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 244). Because the inquiry is based on country-specific evidence, the inquiry is necessarily conducted case-by-case, country-by-country, and, in some cases, region-by-region. *See Conde Quevedo*, 947 F.3d at 1242. We review the record for "substantial evidence" and "reverse the BIA only on a finding that the evidence not only supports a contrary conclusion, but compels it." *Reyes*, 842 F.3d at 1137 (internal quotation marks and alterations omitted).

Our cases show how this case-by-case, evidence-based inquiry works in practice. In *Henriquez-Rivas v. Holder*, we concluded that the particular social group of "people who testified against gang members" in El Salvador was socially distinct because a "witness protection law" passed by the "Salvadoran legislature" for those types of witnesses showed that "Salvadoran society recognizes the unique vulnerability" of that group. 707 F.3d 1081, 1090–92 (9th Cir. 2013) (en banc). In *Conde Quevedo*, by contrast, the particular social group of people in Guatemala "who report the criminal activity of gangs to police" did not meet the social distinction test because there was no record evidence,

including "country reports, background documents, or news articles," showing that those who report gang violence were recognized as a distinct group in Guatemala. 947 F.3d at 1242–43.

This case fits into the latter scenario. Nothing in the record addresses whether Mexican society views either of Mr. Diaz-Torres's proposed social groups as distinct. No laws or proposed legislation so indicate. Nor do any country conditions reports or news articles mention such a group. To the contrary, the evidence paints a picture of all segments of the Mexican population being adversely affected by the brutality of drug cartels. And the expert testimony does not bridge the gap. That testimony also indicates that almost anybody can be targeted by the drug cartels and does not show that Mexican society views as distinct the groups Mr. Diaz-Torres claims to be a member of.

Nor does Mr. Diaz-Torres's testimony make the required showing. Mr. Diaz-Torres testified that it is well understood in Mexico that Mexican professionals are targeted by cartels. He stated, for example, that agricultural engineers and other licensed professionals are regularly killed in his town for refusing to work with the cartels. He also testified that one of his former colleagues, also an agronomist, was killed by the cartels for not helping them. According to Mr. Diaz-Torres, there is even a phrase in his town for those who are recruited or targeted by cartels.

Some of this testimony indicates that *cartel members* view individuals like Mr. Diaz-Torres as targets for extortion or violence. But the view of Mr. Diaz-Torres's persecutors does not inform the social distinction inquiry except to the extent it is "indicative of whether society views the group as distinct." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 242. As described above, we must focus on how *society* views the

proposed group.  *Conde Quevedo*, 947 F.3d at 1242; *accord Rios v. Lynch*, 807 F.3d 1123, 1127 (9th Cir. 2015) ("[R]ecognition of a particular social group is determined by the perception of the society in question, rather than by the perception of the persecutor.") (internal quotation marks omitted).  Otherwise, almost any group would be distinct so long as it was on a "persecutor's enemies list." *Henriquez-Rivas*, 707 F.3d at 1102 (Kozinski, C.J., dissenting).

Moreover, to the extent some of Mr. Diaz-Torres's testimony does relate to the social distinction requirement, it did not satisfy his burden of proof as to that element.  After all, the social distinction requirement is concerned with how *others* view Mr. Diaz-Torres—not how he believes others view him.  Objective evidence "such as country conditions reports, expert witness testimony, and press accounts of discriminatory laws and policies, historical animosities, and the like may establish that a group exists and is perceived as 'distinct' or 'other' in a particular society." *Pirir-Boc*, 750 F.3d at 1084 (internal quotation marks omitted).  By contrast, the testimony of the applicant alone is insufficient to establish the social distinction of a proposed group unless the petitioner "satisfies the trier of fact that the [petitioner's] testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate" that the petitioner's proposed group is socially distinct.  8 U.S.C. § 1158(b)(1)(B)(ii).  Given this standard, when a finder of fact concludes that the petitioner's testimony alone is insufficient to establish the social distinction of a proposed group, we would not be compelled to conclude otherwise (even if we would have reached a different conclusion), unless the IJ were objectively unreasonable or failed to act as a neutral fact-finder.

We note that this approach comports with our assessment, consistent with the requirements of 8 U.S.C. § 1158(b)(1)(B)(ii), of the burden of proof in determining refugee status. Because Mr. Diaz-Torres was found to be credible, we take his testimony as true. *See Singh v. Holder*, 764 F.3d 1153, 1159 (9th Cir. 2014). But Mr. Diaz-Torres's testimony alone is not necessarily "sufficient to sustain" his burden. 8 U.S.C. § 1158(b)(1)(B)(ii). The testimony must satisfy "the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." *Id.* Moreover, corroboration may be required—even when testimony is credible—if the agency so decides, unless "the applicant does not have the evidence and cannot reasonably obtain" it. *Id.* And the social distinction inquiry encompasses principles that will ordinarily demand some type of corroborative, objective evidence. Because there is no such evidence here, substantial evidence supports the BIA's conclusion that Mr. Diaz-Torres "has not met his burden to produce evidence demonstrating that his purported group is socially distinct."

\*     \*     \*

Because Mr. Diaz-Torres has not met his burden of demonstrating that he is a member of a particular social group, the petition for review is **DENIED**.