NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 3 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ELMER GIOVANNY ROGEL LOPEZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No.   19-72209

Agency No. A206-498-052

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 12, 2021
Pasadena, California

Before:  PAEZ and VANDYKE, Circuit Judges, and KORMAN,** District Judge.
Partial Dissent by Judge VANDYKE

   Petitioner Elmer Giovanny Rogel Lopez, a native and citizen of El Salvador,

petitions for review of the Board of Immigration Appeals' ("BIA") decisions

affirming the Immigration Judge's ("IJ") denial of his claims for asylum,

---

   *      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

   **      The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We review de novo questions of law and review for substantial evidence the agency's factual findings. *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1076 (9th Cir. 2020). For the reasons explained below, we grant the petition and remand.

1.      Rogel Lopez first argues that he is eligible for asylum and withholding of removal because he was persecuted on account of his "membership in a particular social group." 8 C.F.R. § 1208.13(b)(1) (asylum); 8 U.S.C. § 1231(b)(3)(A) (withholding of removal). To establish eligibility on that basis, a petitioner must show "that the group is: '(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" *Diaz-Reynoso*, 968 F.3d at 1077 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)). Reviewing de novo the cognizability of a proposed particular social group, *id.* at 1076, we conclude that the IJ and BIA erred by misconstruing Rogel Lopez's proposed particular social group.

The IJ and BIA characterized Rogel Lopez's proposed group as "men who are not gang members in El Salvador who witnessed gang crimes and are persecuted by such gang members for the belief that they reported the crimes." But Rogel Lopez argued before the agency that he was persecuted on account of

his imputed membership in a slightly different group, one defined as Salvadoran men who are not gang members, witnessed a gang crime in El Salvador, and reported that crime to the police. *See Pirir-Boc v. Holder*, 750 F.3d 1077, 1083 n.6 (9th Cir. 2014) (noting that the BIA has recognized imputed membership in a particular social group as a proper basis for asylum). Because the agency considered the wrong social group, "and neither the BIA nor the Ninth Circuit is authorized to undertake the initial factfinding necessary to determine the viability of the group," we remand to the IJ to consider Rogel Lopez's proposed group in the first instance. *Alanniz v. Barr*, 924 F.3d 1061, 1069 (9th Cir. 2019). On remand, the agency must consider immutability, particularity, and social distinction in light of the proper particular social group.

"Because [Rogel Lopez]'s claim for withholding of deportation was denied solely on the basis of his failure to satisfy the burden required for asylum, that claim is also remanded." *Pirir-Boc*, 750 F.3d at 1084.[1]

**2.** Next, Rogel Lopez argues that the BIA's denial of his CAT claim was not supported by substantial evidence. We agree and remand with instructions for the agency to grant withholding of removal under CAT.

---

[1] In light of our disposition of these claims, we do not address whether the proposed particular social group is cognizable, whether Rogel Lopez suffered past persecution, or whether Rogel Lopez has a well-founded fear of future persecution. To the extent we have jurisdiction over those issues, they are remanded for further consideration.

Under CAT's implementing regulations, "an applicant bears the burden of establishing that [he] will more likely than not be tortured with the consent or acquiescence of a public official if removed to [his] native country." *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining . . . information or a confession, [or] punishing him . . . for an act he . . . has committed or is suspected of having committed . . . ." 8 C.F.R. § 1208.18(a)(1). Mental pain or suffering alone can constitute torture if the petitioner experiences "prolonged mental harm caused by . . . [t]he threat of imminent death." 8 C.F.R. § 1208.18(a)(4); *Xochihua-Jaimes*, 962 F.3d at 1183.

When the agency evaluates a CAT claim, it "must consider all relevant evidence; no one factor is determinative." *Xochihua-Jaimes*, 962 F.3d at 1183 (citation omitted). "Relevant evidence includes: '(i) Evidence of past torture inflicted upon the applicant; [and] (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured . . . .'" *Id.* at 1183–84 (quoting 8 C.F.R. § 1208.16(c)(3)). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.16(c)(2).

Substantial evidence does not support the BIA's determination that Rogel

Lopez failed to establish that he would more likely than not be tortured with the consent or acquiescence of a public official if he is removed to El Salvador.[2] *See Xochihua-Jaimes*, 962 F.3d at 1183. The BIA concluded that Rogel Lopez (1) did not experience past torture, (2) "could reasonably relocate within El Salvador" to avoid future torture, and (3) failed to show government acquiescence because "even if there is corruption at the local police level, [Rogel Lopez] has not shown that police at a higher level would not intervene on his behalf." We address those conclusions in turn.

First, the evidence compels the conclusion that Rogel Lopez was a victim of past torture. *See Nuru v. Gonzales*, 404 F.3d 1207, 1217 (9th Cir. 2005) ("Past torture is the first factor we consider in evaluating the likelihood of future torture . . . ."). Past torture is highly relevant to the likelihood of future torture because when "an individual has been tortured and has escaped to another country, it is likely that he will be tortured again if returned," unless circumstances "have changed significantly . . . with respect to the particular individual." *Id.* at 1217–18. We have previously held that being "beaten severely and threatened with death at gunpoint" constituted "a past instance of torture." *Xochihua-Jaimes*, 962 F.3d at 1185.

---

[2] The IJ found Rogel Lopez's testimony credible. Thus, those "facts, and their reasonable inferences," are "deemed true." *Nuru v. Gonzales*, 404 F.3d 1207, 1216 (9th Cir. 2005) (citation omitted).

The severe beatings and threats of imminent death that Rogel Lopez suffered over a two-day period show that he suffered past torture. 8 C.F.R. §§ 1208.18(a)(1), (a)(4)(iii). Rogel Lopez was initially handcuffed and kidnapped by two police officers who demanded that he confess to reporting a gang crime to the police. After transporting Rogel Lopez to an isolated location, the officers threatened him with a gun, placed the gun against his head and inside his mouth, and fired shots next to his head. The officers also beat him repeatedly with a rifle. Rogel Lopez "kept telling them that [he] didn't do it." The officers discussed whether to kill Rogel Lopez, but instead chose to deliver him to the gang members as a "gift." There, Rogel Lopez was tied up and blindfolded. For about three hours, the gang members kicked him in the ribs, beat his face, and repeatedly held a knife to his neck.[3] Blindfolded and bleeding from his nose, Rogel Lopez was left to wait for another gang member to arrive so that the gang could decide which person would ultimately kill him. The wait lasted approximately twenty-four hours. During that time, Rogel Lopez "felt that any minute, any second, that they would come in, they would kill me." He believed he was going to die. This evidence compels a finding that Rogel Lopez suffered past torture. *See Xochihua-Jaimes*, 962 F.3d at 1185.

Second, the evidence compels the conclusion that Rogel Lopez could not

---

[3] The combined beatings left Rogel Lopez with lasting injuries and pain.

6

safely relocate within El Salvador. *See id.* at 1187. The CAT standard does not require a petitioner to show that internal relocation is impossible. *Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015) (en banc). To the contrary, "it will rarely be safe to remove a potential torture victim on the assumption that torture will be averted simply by relocating him to another part of the country." *Nuru*, 404 F.3d at 1219. In *Arrey v. Barr*, 916 F.3d 1149 (9th Cir. 2019), we held "that substantial evidence did not support the Board's determination that [petitioner] . . . could safely relocate within Cameroon" where the record established that the petitioner's assailant found her while she was hiding in a different city. *Id.* at 1161.

Rogel Lopez tried and failed to relocate three times, in three different cities, before fleeing the country. Because Rogel Lopez cannot safely relocate within El Salvador, *see id.*, this factor "weighs in favor of granting [him] relief." *Xochihua-Jaimes*, 962 F.3d at 1187.[4]

Third, the evidence compels the conclusion that Rogel Lopez's torture was

---

[4] The BIA concluded that Rogel Lopez could safely relocate within El Salvador because declarations from Rogel Lopez's uncle and sister did not indicate that they had been harassed by gangs or police seeking Rogel Lopez's whereabouts after they moved cities. But "conjecture is not a substitute for substantial evidence." *Lopez-Reyes v. INS*, 79 F.3d 908, 912 (9th Cir. 1996). Furthermore, whether Rogel Lopez's uncle and sister could avoid harassment by relocating is "irrelevant" because they are not "similarly situated"—neither his uncle nor his sister are believed to have reported gang crimes to the police. *See Kumar v. Gonzales*, 444 F.3d 1043, 1055 (9th Cir. 2006) (discussing relocation in the asylum context).

inflicted by or with the acquiescence of a public official. 8 C.F.R. § 1208.18(a)(1). We have repeatedly held that a petitioner "need not show that the entire foreign government would consent to or acquiesce in his torture"; rather, he "need show only that 'a public official' would so acquiesce." *Madrigal v. Holder*, 716 F.3d 499, 509 (9th Cir. 2013) (quoting 8 C.F.R. § 208.18(a)(1)); *see also Barajas-Romero v. Lynch*, 846 F.3d 351, 363 (9th Cir. 2017) ("The BIA's 'rogue official' rationale is inconsistent with circuit law."). Furthermore, a petitioner need not "show the 'acquiescence' of the government when [his] torture was inflicted *by* public officials themselves." *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1079 (9th Cir. 2015) (quoting 8 C.F.R. § 1208.18(a)(1)).

Rogel Lopez was kidnapped and tortured by two police officers who drove a patrol car and wore police badges. There is no dispute that both officers were public officials. Thus, Rogel Lopez has established that he "was subject to torture at the hands of local officials." *Id.* at 1080. Even if Rogel Lopez's suffering rose to the level of torture only when considering the officers' actions in combination with those of the gang members, the officers plainly acquiesced in his torture by beating him severely, threatening him with death, and then delivering him to gang members who continued to beat and threaten him. *See Xochihua-Jaimes*, 962 F.3d at 1185 (holding that police officers acquiesced in petitioner's torture when they "looked on and did [] nothing but laugh").

8

Overall, in light of the record evidence, *see* 8 C.F.R. § 1208.16(c)(3), we conclude that the BIA's denial of Rogel Lopez's CAT claim is not supported by substantial evidence. There is no need to remand for further consideration because the BIA has twice "fully considered" the claim. *See Avendano-Hernandez*, 800 F.3d at 1082. We therefore remand "for a grant of CAT relief." *Id.*

**3.** In sum, we grant Rogel Lopez's petition and remand for further consideration his claims for asylum and withholding of removal. We remand Rogel Lopez's CAT claim for a grant of CAT relief.

**Petition for review GRANTED and REMANDED.**



*Rogel Lopez v. Garland*, No. 19-72209

VANDYKE, Circuit Judge, dissenting in part.

I join Part 1 of the majority's disposition, but disagree as to Petitioner Elmer Giovanny Rogel Lopez's Convention Against Torture (CAT) claim. As to the majority's disposition of that claim, I respectfully dissent. I would hold that substantial evidence supports the agency's determination that Rogel Lopez's past harm did not rise to the level of torture, and that Rogel Lopez could reasonably relocate within El Salvador. I would therefore affirm the agency's dismissal of Rogel Lopez's CAT claim.

1. First, the record does not *compel* the conclusion that Rogel Lopez's mistreatment rose to the level of torture. *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1031 (9th Cir. 2014). The agency could have determined that Rogel Lopez's mistreatment rose to the level of torture, as could this panel if we were evaluating this claim de novo. But we are not. Instead, when reviewing the agency's denial of CAT relief, we must apply the "extremely deferential" substantial evidence standard of review, which only allows us to reverse the agency if "the evidence not only *supports* a contrary conclusion, but *compels* it—and also compels the further conclusion that the petitioner meets the requisite standard for obtaining relief." *Garcia-Milian*, 755 F.3d at 1031 (citation, alteration marks, and internal quotation marks omitted); *see also Jiang v. Holder*, 754 F.3d 733, 738 (9th Cir. 2014).

1

2. Here, our court has already determined that similar or worse treatment than what Rogel Lopez experienced does *not* compel the conclusion that such mistreatment rises to the level of torture sufficient to justify CAT relief. *See, e.g.*, *Vitug v. Holder*, 723 F.3d 1056, 1061, 1066 (9th Cir. 2013) (concluding that severe physical beatings and economic deprivation did not justify CAT relief); *Ahmed v. Keisler*, 504 F.3d 1183, 1188–89, 1200–01 (9th Cir. 2007) (concluding that being taken into custody and beaten four times, including once where the captors killed the petitioner's uncle in front of the petitioner, did not justify CAT relief); *Kumar v. Gonzales*, 444 F.3d 1043, 1055–56 (9th Cir. 2006) (concluding that "a month-long detention that included severe physical attacks and threats to [the petitioner's] life" did not justify CAT relief). The fact that reasonable minds can and have differed on mistreatment not appreciably distinguishable from that presented in this case prevents us from concluding that the record compels a conclusion contrary to the agency's determination, which is the only decision before us in our limited review. *See Vitug*, 723 F.3d at 1066 (affirming the agency's denial of CAT relief based on precedent that concerned similar mistreatment). The agency reasonably relied on our precedent concluding that similar mistreatment did not necessarily rise to the level of torture, and we are therefore not compelled to reach a contrary conclusion.

3. Second, even if Rogel Lopez's past mistreatment rose to the level of torture, the record does not compel the conclusion that Rogel Lopez could not relocate within

2

El Salvador to avoid future harm.  *See Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015) (en banc); 8 C.F.R. § 1208.16(c)(3)(ii).  The fact that Rogel Lopez's family members avoided continued harassment by relocating supports the conclusion that Rogel Lopez could as well.  *Blandino-Medina v. Holder*, 712 F.3d 1338, 1348 (9th Cir. 2013) ("Furthermore, he had not presented evidence that similarly-situated individuals are being tortured by Nicaraguan officials.  Given the deference this court must afford to the BIA's findings of fact, we affirm its decision to deny CAT relief to [the petitioner].").  The only reason that the gangs were harassing his family was to find Rogel Lopez, so the evidence that his family was able to break contact with the gangs by relocating suggests that Rogel Lopez could do so as well.  The agency's conclusion that Rogel Lopez could safely relocate is therefore supported by substantial evidence.[1]

\* \* \*

For these reasons, I would deny the petition with respect to Rogel Lopez's CAT claim.  I therefore respectfully dissent from that part of the majority's decision.

---

[1] Because I conclude that the record does not compel the conclusion that Rogel Lopez faces a greater than 50 percent risk of torture upon his return to El Salvador, I would not reach the issue regarding the government's acquiescence. *See Konou v. Holder*, 750 F.3d 1120, 1124 (9th Cir. 2014) ("[R]elief under [CAT] requires a two part analysis—first, is it more likely than not that the alien will be tortured upon return to his homeland; and second, is there sufficient state action involved in that torture." (citation omitted)).