**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED

MAY 13 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DEBORA LETICIA MONCADA CASTRO, | No.    18-71763 |
| Petitioner, | Agency No. A094-293-187 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 11, 2022[**]
Pasadena, California

Before:  WATFORD and FRIEDLAND, Circuit Judges, and HELLERSTEIN,[***] District Judge.

Debora Leticia Moncada Castro, a native and citizen of Honduras, petitions

for review of an order of the Board of Immigration Appeals (BIA) dismissing her

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]    The Honorable Alvin K. Hellerstein, United States District Judge for the Southern District of New York, sitting by designation.

appeal from the decision of an Immigration Judge (IJ) pretermitting her application for cancellation of removal and denying her applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We grant the petition as to Moncada Castro's claims for asylum and withholding of removal and deny the petition as to the remainder of her claims.

**1.** Moncada Castro claims she is eligible for asylum and withholding of removal based on her membership in a particular social group (PSG) consisting of "individuals who were attacked and then provided assistance or support to the police in order to charge an individual with a crime." She contends that her proposed PSG is similar to the group considered by this court in *Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013) (en banc), which held that the BIA misapplied its own precedent in rejecting a proposed PSG of "people testifying against or otherwise oppos[ing] gang members." *Id.* at 1086, 1091 (alteration in original). The IJ found that Moncada Castro's proposed PSG was not cognizable because it lacked both particularity and social distinction. By way of analysis, the IJ stated only that Moncada Castro's situation does not "rise[] to the level of *Henriquez-Rivas v. Holder* . . . in that she did not testify in Court." The BIA agreed with the IJ that the proposed PSG was neither particular nor socially distinct without conducting its own analysis of the facts or mentioning *Henriquez-Rivas*.

When "the BIA's analysis on the relevant issues is confined to a simple

statement of a conclusion," we will look to the IJ's decision "as a guide to what lay behind the BIA's conclusion." *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010) (citations and internal quotation marks omitted). Here, the IJ erred in concluding that *Henriquez-Rivas* did not apply simply because Moncada Castro did not testify in court. Moncada Castro reported a crime to the police and did not do so privately or anonymously. Indeed, the record shows that her alleged persecutors knew she had gone to the police since they threatened to harm her if she did not drop the charges. *Cf. Conde Quevedo v. Barr*, 947 F.3d 1238, 1241, 1243 (9th Cir. 2020) (distinguishing *Henriquez-Rivas* when the petitioner "did not know whether the people who attacked him knew that he and his father had reported the attacks to the police"). Thus, in this case, reporting her assault to the police was a public act akin to the in-court testimony in *Henriquez-Rivas*.

Because the agency relied on this improper distinction, it failed to perform "the required evidence-based inquiry" into whether the proposed PSG is cognizable. *Pirir-Boc v. Holder*, 750 F.3d 1077, 1084 (9th Cir. 2014); *see also Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1088 (9th Cir. 2020) (remanding "[b]ecause the BIA avoided the case-specific [PSG] inquiry demanded by . . . the BIA's precedents"). With respect to social distinction, the agency did not address the record evidence showing that Honduras has a witness protection program, and, as we observed in *Henriquez-Rivas*, "[i]t is difficult to imagine better evidence that a

society recognizes a particular class of individuals as uniquely vulnerable" to violent criminal elements. 707 F.3d at 1092. As to particularity, the agency did not consider whether membership in Moncada Castro's proposed PSG could be verified and delimited through police records documenting victims of violent crimes, just as court records could show which individuals had testified against gangs in *Henriquez-Rivas*. *See id.* at 1093. Accordingly, we grant Moncada Castro's petition as to her claims for asylum and withholding of removal and remand to the BIA to perform the required analysis of her proposed PSG.

We do not consider three other issues raised by Moncada Castro—the timeliness of her asylum petition, whether her experience qualifies as past persecution, and her fear of future persecution—because they were not addressed by the BIA. First, while the IJ found that Moncada Castro's asylum petition was untimely, the BIA did not rely on this ground in rejecting her claim. Second, the BIA did not consider whether Moncada Castro had suffered past persecution on account of her claimed membership in her proposed PSG. Third, if Moncada Castro establishes past persecution, the government will be required to rebut a presumption of future persecution. 8 C.F.R. § 1208.13(b)(1). Because the BIA did not reach the issue of past persecution, its conclusion that Moncada Castro "did not establish an objective likelihood that she will be harmed in the future" was not a determination that the government could overcome this presumption.

**2.** The BIA's conclusion that Moncada Castro is not entitled to CAT protection is supported by substantial evidence. The threats Moncada Castro experienced occurred over 23 years before the BIA's decision, and she produced no evidence other than her own speculative testimony to show that her alleged persecutors would still seek to harm her. Thus, the evidence does not compel the conclusion that it is more likely than not Moncada Castro will be tortured if returned to Honduras. *See* 8 C.F.R. § 1208.16(c)(2).

**3.** The BIA correctly concluded that Moncada Castro is ineligible for cancellation of removal because her convictions for forgery and petty theft both qualify as convictions for crimes involving moral turpitude. *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2)(A)(ii) (providing a petty offense exception for non-citizens with only one conviction for a crime involving moral turpitude). Forgery under California Penal Code section 470(d) requires a showing of "intent to defraud" and therefore qualifies as a crime involving moral turpitude. *Tall v. Mukasey*, 517 F.3d 1115, 1119 (9th Cir. 2008). Petty theft under California Penal Code section 488 is also a crime involving moral turpitude because it requires a specific intent to deprive the victim of his or her property permanently. *Castillo-Cruz v. Holder*, 581 F.3d 1154, 1160 (9th Cir. 2009) (citing *People v. Guerra*, 708 P.2d 1252, 1256 (Cal. 1985)).

Moncada Castro contends that the BIA erred by retroactively applying

*Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847 (BIA 2016), and *Matter of Obeya*, 26 I. & N. Dec. 856 (BIA 2016), but this argument fails.  These decisions held for the first time that theft offenses may qualify as crimes involving moral turpitude even if they require only an intent to accomplish a *temporary* deprivation.  *See Obeya*, 26 I. & N. Dec. at 859.  It was already well-established at the time of Moncada Castro's 1996 petty theft conviction that offenses requiring an intent to accomplish a *permanent* deprivation, like California Penal Code section 488, qualify as crimes involving moral turpitude.  *See Matter of Grazley*, 14 I. & N. Dec. 330, 333 (BIA 1973).

**PETITION FOR REVIEW GRANTED in part and DENIED in part; CASE REMANDED.**

The parties shall bear their own costs on appeal.